UNITED STATES, Appellee

v

DALE E. NOYD, Captain, U. S. Air Force, Appellant

18 USCMA 483, 40 CMR 195

484

No. 21,642

August 15, 1969

*Marvin M. Karpatkin, Esquire,* and *John DeJ. Pemberton, Jr., Esquire,* argued the cause for Appellant, Accused. With them on the brief were *Colonel Bertram Jacobson, Colonel Joseph E. Krysakowski,* and *Lieutenant Colonel Leonard Eichner.*

*Major Robert L. Bates* argued the cause for Appellee, United States. With him on the brief was *Colonel James R. Thorn.*

## Opinion of the Court

QUINN, Chief Judge:

In 1955, the accused was graduated from Washington State University and honored as a Distinguished Military Graduate for his participation in the University's Reserve Officer's Training Corps program. He accepted a commission in the Air Force and entered upon active duty. Under Air Force aegis he continued academic studies at the University of Michigan, earning a Master's degree in Psychology and completing the academic requirements for a Doctor of Philosophy in Psychology degree. More recently, he developed a belief in "humanism," and now describes himself as a selective or discriminating conscientious objector, that is, one who is "not a universal pacifist." He is not opposed to all war, but he believes the conflict in Vietnam is an unjust war and for that reason he cannot participate in it.

Since the time the accused consciously experienced his present convictions, he initiated a number of proceedings, judicial and administrative, for the purpose of obtaining assignment to duties compatible with his conscientious scruples about the Vietnam conflict or to effect his separation from the service. All his efforts failed.

The accused stands convicted by a general court-martial of wilful disobedience of an order by Colonel Homer K. Hansen, his commanding officer, to fly as instructor in an F-100 aircraft with a student pilot, and he faces dismissal,

forfeiture of all pay and allowances, and confinement at hard labor for one year. The F–100 is a fighter plane used in Vietnam by the Air Force, and the accused believed it would have been an "affront to . . . [his] conscience" to obey Colonel Hansen's order. As a result, he did not obey it.

Two assignments of error are advanced by the accused as grounds for reversal of his conviction. The first assignment concerns an alleged issue as to jurisdiction; the second deals with the legality of Colonel Hansen's order.

As stated in the petition for grant of review, the accused's first assignment of error is that the law officer and the board of review erred in ruling "there was no jurisdiction by either a general court-martial or a Board of Review . . . to determine whether the order was rendered unlawful by the prior erroneous action by the Secretary of the Air Force in denying the accused's application for separation or reassignment on grounds of conscientious objection." We are not referred to any place in the record of trial where such ruling was made by the law officer. On the contrary, the record demonstrates the law officer, Judge Advocate Harold R. Vague, considered the Secretary's ruling several times during the trial and specifically passed upon its legal effect as to the charge against the accused.

First consideration of the Secretary's ruling appears in the proceedings at the beginning of trial on a defense motion to dismiss the charge on the ground that Colonel Hansen's order "was illegal." The contention of illegality was predicated upon the following grounds: (1) That denial of the accused's application for reassignment or separation was based on the "erroneous" assumption that only a "universal pacifist," that is, one conscientiously opposed to all war, was allowed exemption from military service under the draft law; (2) that the Air Force regulation providing for release of an Air Force member who had become a conscientious objector while in the service (Air Force Regulation 35–24, Disposition of Conscientious Objectors, March 8, 1963) lacked constitutional due process because it did not provide a hearing on the application; and (3) that certain commanders in the chain of command between the applicant and the Secretary did not comply with procedural requirements of the regulation as to indorsements of approval or disapproval.

To clarify the substantive elements of the motion, Judge Vague asked defense counsel whether the motion comprehended a contention that the alleged illegality of the regulation and the Secretary's "erroneous" assumption effected the accused's separation from the service and made him unamenable to military orders. Assured the claim was not included within the defense contentions, Judge Vague expressly indicated that: "All of this [the accused's representations as to illegality of the regulation and the error of the Secretary's assumption] may be and probably will be brought in on the issue of legality of the order," which "might well be the basis for a motion for a finding of not guilty." The mention he made of jurisdiction was in connection with the right of the court-martial to hear and decide the charge against the accused, which he deemed implicit in the motion to dismiss. What Judge Vague did was to differentiate between a motion to dismiss and a motion for a finding of not guilty on the basis of the illegality of the order.

In the defense argument there were some references to mixed questions of law and fact which tended to suggest the existence of an issue for the court members, but the import of the motion was to challenge the legality of the order, and its time of presentation, and its form presented the matter only as a question of law. United States v Carson, 15 USCMA 407, 35 CMR 379; cf. United States v White, 17 USCMA 211, 38 CMR 9. While not argued by the defense, the motion might have been construed as including a challenge to

the sufficiency of the specification to allege an offense because of the illegality of Colonel Hansen's order. A challenge of that kind is includable in a motion to dismiss. Article 51(b), Uniform Code of Military Justice, 10 USC § 851; Manual for Courts-Martial, United States, 1951, paragraph 68. See also United States v Boehm, 17 USCMA 530, 38 CMR 328. Although Judge Vague appears not to have considered the motion from that standpoint, he did not rule, as the accused contends, that he had no authority to judge the legality of the Secretary's action as affecting the legality of Colonel Hansen's order. On the contrary, he specifically noted that he not only had the power, but would not hesitate to assert it, if it appeared that the Secretary's action invalidated Colonel Hansen's order. Part of the colloquy on the point merits quotation:

"LO . . . I am not concerned about whether the Air Force failed to comply with their own regulation. I am not concerned whether there was a denial of equal protection of the law. I will assume for the purpose of this motion that all of these things are true. I only want argument on whether or not these things being true would make the order given the accused unlawful as a matter of law. . . .

. . . . . . .

"ATC . . . Captain Noyd got a fair hearing from Colonel Hoy who as a matter of fact gave him a favorable indorsement. This indorsement went forward and was ultimately—this request went forward and was ultimately denied by the Secretary of the Air Force who acted within the area of his discretion as to the facts and as to law. I suggest also that this was solely a matter of his discretion. . . . I cite one case and would like to quote from it, Orloff vs Willoughby, 345 US 83:

. . . . . .

"And this was dealing with Dr. Orloff who was a physician drafted and contested the fact that he was not assigned to duties as a physician and that he was not given a commission.

'. . . Orderly government requires that the judiciary be as scrupulous not to interfere with the legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. While the courts have found occasion to determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders, we have found no case where this court has assumed to revise duty orders as to one lawfully in the service.'

"Orders carry a presumption of legality and are specifically a matter for the service. I don't think this presumption has been overcome.

"LO I don't really see how the Orloff case pertains here. It says civilian courts will not interfere with military courts. This is a military court.

"ATC I think the general rule applies to all courts and is perhaps a good one. I would hate to think that a military court is even a proper place to contest the decision of the Secretary of the Air Force, whether it be a military or a civilian court.

"LO I have no hesitancy in ruling on a proper showing that the Secretary of the Air Force abused his discretion, and I think this is certainly the proper forum to go into the legality of an order."

Eventually, Judge Vague denied the motion to dismiss. In the course of the trial he reconsidered the issues raised by the motion and made other rulings as to the legal effect of the Secretary's action. We shall refer to the details later. At this point, it is sufficient to note that Judge Vague did not refuse to exercise such judicial power he might possess in regard to determining the legal consequences on the offense charged of the Secretary's denial of the request for separation from the service. Cf. United States v Berry, 6 USCMA 609, 20 CMR 325.

So far as the first assignment of error is concerned, we find no merit in the attack on the law officer's trial rulings.

As to the attack on the board of review in the first assignment of error, we perceive no prejudice to the accused. The board of review indicated in its opinion that the staff judge advocate had considered eighteen of the nineteen assignments of error presented to it, and it expressly "adopt[ed] his conclusions." The staff judge advocate noted that the accused's willful disobedience of Colonel Hansen's order was established beyond a reasonable doubt "unless the matters urged by defense counsel at trial established a legal and valid defense." He considered the "main issue" to be whether the accused "should have been granted conscientious objector status when he applied for such classification," and he discussed it at length. He acknowledged there was "no doubt" that the accused's conscientious objections to participating in the Vietnam conflict were based upon religious training and beliefs and were sufficient to satisfy one of the two conditions for separation which he believed were required by AFR 35–24. However, he concluded the accused failed to meet a second condition of the regulation because he had conceded he was not opposed to all war but only the Vietnam war and, therefore, the accused was not entitled "as a matter of law, to be classified as a conscientious objector." Since the staff judge advocate had inquired into the correctness of the Secretary's disposition of the accused's application under AFR 35–24 for the purpose of determining the legality of Colonel Hansen's order, it would appear the board of review also accepted "jurisdiction" to determine that question. However, the board of review referred to its earlier opinion in United States v Dunn, 38 CMR 917, in which it held that the Uniform Code of Military Justice did not "grant . . . jurisdic-

tion to military tribunals to review such administrative determinations." *Id.*, at page 920. Thus, the board of review would appear to have acted on alternative bases, one acknowledging "jurisdiction" to inquire into, and in fact deciding, the correctness of the Secretary's ruling in order to determine if it imparted illegality to the order allegedly violated by the accused, and the other disclaiming "jurisdiction" to review the legality of the Secretary's decision as an administrative matter not within its competence.

At this stage of the proceedings, the exact basis for the board of review's decision is not really important. Appellate defense counsel concede that the material facts appear in the record and were accurately "summarized" by the staff judge advocate and the board of review. The remaining judicial act is to determine whether as a matter of law the Secretary's ruling rendered illegal Colonel Hansen's order to the accused. As noted previously, this question is the subject of the second assignment of error. With the material facts before us, we can directly decide the substance of the question, without considering the precise ground upon which the board of review rested its decision. United States v Mathis, 16 USCMA 522, 37 CMR 142, footnote 1; United States v McLaughlin, 18 USCMA 61, 39 CMR 61; cf. United States v Perez, 18 USCMA 24, 25, 39 CMR 24. The first assignment of error, therefore, affords no reason to return the case to the board of review.

In the second assignment of error, the accused contends the Secretary of the Air Force "erroneously denied" his application for separation or reassignment "as a conscientious objector." As we pointed out previously, the matter was decided against the accused at trial and in the initial review by the convening authority.[1]

---

[1] At trial, the law officer referred to In re Kanewske, 260 F Supp 521 (ND Cal) (1966), which had been cited to him by defense counsel. He noted there was "an indication" in the opin-
ion to the effect that improper denial of the application would "somehow" deprive the court-martial of jurisdiction. While Judge Vague could not "see the court's reasoning," he invited

An order may be invalid for many reasons. We need not attempt to catalog all of them. Illustratively, an order may be invalid because the person who issued it lacks authority to promulgate an order of that kind (United States v Bunch, 3 USCMA 186, 11 CMR 186; United States v Matthews, 8 USCMA 94, 23 CMR 318); it may be illegal because it does not relate to a military duty and improperly infringes upon a private right (United States v Milldebrandt, 8 USCMA 635, 25 CMR 139; United States v Wilson, 12 USCMA 165, 30 CMR 165); it may be illegal because it is contrary to the command of a superior (United States v White, 17 USCMA 211, 38 CMR 9); it may be illegal because it is contrary to the Constitution or a statute (United States v Musguire, 9 USCMA 67, 25 CMR 329). An order, apparently valid on its face, may also be illegal because it is based on, or has its generating source in, an unlawful command of a superior. In United States v Voorhees, 4 USCMA 509, 16 CMR 83, a regulation by the Secretary of the Army attempted to control review of manuscripts by military personnel. In part, the regulation was illegal because it violated a Department of Defense directive. The Commanding General of the Sixth Army issued an order to the accused to effectuate the Army regulation. This Court approved a board of review determination that the order was illegal, and the accused could not be prosecuted for disobeying it.

We start with the nature of the exemption from military service because of religious belief or conscientious scruple. The exemption has an ancient lineage of legislative recognition, but the question is whether it exists as an individual right protected against all infringement by the Government. During the initial stages of this appeal, appellate defense counsel conceded that exemption from military service depended upon legislative grace. Later, they abandoned the concession to assert the existence of a constitutionally protected right. In support, they cite certain literary references and the opinion by Chief Judge Wyzanski of the United States District Court in Massachusetts, in United States v Sisson, Criminal No. 68–237, decided April 1, 1969.

Some contemporary writings argue for either total or partial exemption from military service because of conscientious scruples as an inviolable individual right, but the *Sisson* opinion does not support that claim. Chief Judge Wyzanski expressly assumed that the Government had power to conscript the "generality of men for combat service" and, more particularly, that it possesses the power to conscript "anyone it sees fit" in defense of the homeland. Primarily, what Judge Wyzanski decided was whether the 1967 Draft Act was constitutionally applied to the defendant, a civilian. He concluded that it was not. Whatever the significance of his opinion on that issue, it did not depart from the mainstream of cases holding that exemption from military service for any reason is a matter of legislative grace. United States v Macintosh, 283 US 605, 75

---

defense counsel to renew the motion to dismiss. The motion was renewed and he denied it, giving his reasons therefor. As to jurisdiction, he ruled that even if the Secretary's action was erroneous in law, the accused's status as a member of the Air Force was not altered or severed, and the accused continued to be subject to the Uniform Code of Military Justice. As to the correctness of the Secretary's ruling, the law officer held that AFR 35–24 did not unconstitutionally deny the accused due process; that the Secretary did not err in law by adopting the policy of the Selective Service System to accord conscientious objector classification only to a "universal pacifist"; and, further, if Selective Service was wrong in its policy of limitation, it was not illegal for the Secretary to limit service classification of conscientious objectors to the "universal pacifist." Finally, he ruled that the Secretary did not abuse his discretion in denying the accused's application because there was an adequate "factual basis" for his decision.

L Ed 1302, 51 S Ct 570 (1931); Parrott v United States, 370 F2d 388 (CA 9th Cir) (1966); Richter v United States, 181 F2d 591 (CA 9th Cir) (1950), certiorari denied, 340 US 892, 95 L Ed 647, 71 S Ct 199 (1950).

Congress has provided that all males between the ages of 18½ and 26 may be called for military service. Military Selective Service Act of 1967, Title 50, Appendix, United States Code, section 454(a) (1964 edition, Supp III), replacing the Universal Military Training and Service Act of 1948. Congress has also provided certain exemptions from the obligation of service. One category of exemption is the ·person who "by reason of religious training and belief, is conscientiously opposed to participation in war in any form." *Id.*, section 456(j). Thus, a person may assert an exemption as a conscientious objector, and if the claim is properly established it will bar his induction into the armed services. One who does not assert his right to exemption before he is inducted loses the right. United States v Scheunemann, 14 USCMA 479, 34 CMR 259. Similarly, the individual may elect to go outside the draft system and procure his enlistment or commission in an armed force upon a purely voluntary basis. Suppose either of these individuals thereafter discovers that his conscience will not allow him to do what his duty assignment requires him to do; or suppose a person beyond draft age, such as the accused in this case, determines, after many years of uninhibited service, that the commands of his conscience have changed so they no longer are compatible with his duty assignment or the necessities of military service; what is the consequence to his military status?

Earlier, we indicated the fact that the Constitution neither confers upon, nor preserves to, the individual a right to avoid military service because of compulsions of his conscience. We have not been referred to any act of Congress, and we have found none, which grants a person already in the military the right to be separated

therefrom because while in the service he developed conscientious objection to the concept or prosecution of war. Does the failure of Congress to allow separation from the service for this reason constitute unequal protection of the law or invidious discrimination against servicemen because at the same time Congress allows exemption from the service to civilians? See United States v Gallagher, 15 USCMA 391, 393, 35 CMR 363. We think not.

Military service is not a mere contract relationship but a matter of status. The status cannot be assumed except as authorized by law, and it cannot be terminated except as authorized by law. United States v Scheunemann, supra; United States v Downs, 3 USCMA 90, 11 CMR 90. The accused entered the military service voluntarily, and voluntarily extended his commitment to serve to June 1969. The question then is whether the Constitution commands that he be allowed to cast off his status because Congress authorized a class of persons to claim exemption from involuntary military service. Analogy to another form of status relationship may serve to illumine the answer.

On the birth of a child, special obligations and responsibilities arise between the parent and child for the period of the child's unemancipated minority, just as special duties and responsibilities are established between the serviceman and the Government during a period of military service. We suppose a married couple has the legal right to reject parenthood and take such measures as would assure nonassumption of the status. Pierce v Society of Sisters of Holy Names, 268 US 510, 69 L Ed 1070, 45 S Ct 571 (1925). If, however, the couple has no scruple against parenthood, and in time the husband and wife become parents, we know of no provision in the Constitution of the United States that requires that they be granted the legal right to cast aside their responsibilities as parents, because after the child's birth they developed compelling

scruples of conscience against family life and parenthood.

Fundamental to an effective armed force is the obligation of obedience to lawful orders. The obligation to obey a lawful order cannot be, and is not, as a matter of law, terminated on the mere occurrence of a condition or circumstance that might justify separation from the service. On the contrary, the obligation to obey continues until the individual is actually discharged in accordance with the provisions of law. United States v Downs, supra; United States v Barrett, 3 USCMA 294, 12 CMR 50. See also United States v Grimley, 137 US 147, 151–152, 34 L Ed 636, 11 S Ct 54 (1890). Consequently, the fact that a person in a military status determines that he has undergone a change of conscience does not, at that instant and from that time, endow him with the right to decide what orders are compatible with his conscience. As Justice Cardozo observed, in a related connection, the "right of private judgment has never yet been so exalted above the powers and the compulsion of the agencies of government." Hamilton v University of California, 293 US 245, 268, 79 L Ed 343, 55 S Ct 197 (1934). Thus, the person who voluntarily assumes the military status, but later develops conscientious scruples against such service or participation in armed conflict, is in a radically different position from the person who has such scruples when called to serve in the military and asserts them as a basis for exemption from service. In the case of the latter, the claim can be tested in appropriate ways without endangering a basic requirement of the military establishment; in the case of the former, until determination of the claim, the individual must either be accorded the right of private judgment of obedience to orders, which is unthinkable and unworkable, or the military need for his services must be compromised, at least to the extent of assigning him to duties he regards as consonant with his conscience. In our opinion, these differences between a civilian seeking to avoid military service on the ground of conscience and a military person claiming relief from military duty on the ground of conscience justify different treatment by Congress. We reiterate, therefore, that because Congress has accorded civilians subject to the draft a right of exemption from induction on the grounds of conscience, it has no constitutional duty to grant a serviceman the right to be separated from the service or to demand reassignment to duties unrelated to combat to satisfy his scruples of conscience.

For reasons which can be readily imagined, but need not be recited, the Department of Defense determined to help the serviceman who, while in service, developed conscientious scruples against bearing arms or participating in the military mission. The Secretary of Defense promulgated a directive to authorize separation of conscientious objectors. Department of Defense Directive, No. 1300.6, August 21, 1962, revised May 10, 1968.[2] This directive was effectuated in the Air Force by the provisions of AFR 35–24, March 8, 1963. Paragraph 3 of the regulation in effect at the time of the accused's application provided as follows: "Claims of conscientious objection by all persons, whether existing before or after entering military service, should be judged by the same standards."

According to appellate defense counsel, the Secretary of the Air Force erroneously assumed the regulation included the conscientious objector opposed to all war, but excluded the selective objector opposed to an "unjust" war such as the Vietnam conflict. They further contend that this mistaken assumption led the Secretary to deny the accused's application for separation from the service. The Gov-

---

[2] The directive expressly indicated that no "vested right exists for any individual to be discharged from military service at his own request before the expiration of his term of service." Department of Defense Directive, 1300.6, August 21, 1962, paragraph III.

ernment maintains that, even if wrong as a matter of law, the Secretary's ruling "had absolutely nothing to do with the order the accused chose to disobey." The evidence is contrary to the Government's contention.

Obviously mindful of the conflict between the needs of the service and the plight of the conscientious objector, the regulation directs that, pending consideration of an application by the Secretary, the conscientious objector be assigned duties providing "minimum conflict with his professed beliefs." AFR 35-24, paragraph 7. Colonel Hansen testified he gave the accused the order to fly as an F-100 instructor only after he had been informed the application for separation had been denied. The validity of the order, therefore, depended upon the validity of the Secretary's decision in much the same way the order to the accused in the *Voorhees* case depended upon the validity of the Army's regulation on review of manuscripts by service persons which were intended for civilian publication. If the Secretary's decision was illegal, the order it generated was also illegal. See United States v Gentle, 16 USCMA 437, 37 CMR 57.

Appellate defense counsel contend that the exemption from military service authorized by Congress for civilian conscientious objectors enrolled in the selective service program can be construed to include not only the "universal pacifist," but a discriminating or selective conscientious objector such as the accused. We need not run the course of the argument or independently analyze the supporting material. Counsel concede the Selective Service System has construed the statutory exemption to include only the conscientious objector opposed to all war. Hershey, Legal Aspects of Selective Service, 1963 ed., at page 11. As we understand the argument, it appears to concede also that the regulation's adoption for the Air Force of the "same standards" for judging a claim of conscientious objection in the service as those obtaining in the Selective Service System was intended to grant a right of separation only to the universal objector, not the selective objector. We entertain no doubt that this limitation was intended by the regulation. We come then to this point. We assume for the purpose of this appeal, but without expressing any opinion on the matter, that the exemption from military service provided by Congress for conscientious objectors subject to the draft may extend to the person willing to serve in the military when conscience determines that the conditions of service are just and moral, but unwilling to serve when his conscience dictates that his immediate duty would be unjust and immoral. The draft exemption, however, applies only to civilians; neither its language nor its intention contemplates inclusion of persons already occupying a military status. Petition of Green, 156 F Supp 174 (SD Cal) (1957), appeal dismissed, 264 F 2d 63 (CA 9th Cir) (1959). Conversely, the Air Force regulation, by intention and mode of administration, applies only to the conscientious objector opposed to all war and excludes the serviceman whose conscience conceives a particular conflict or duty assignment as immoral or unjust. The accused concedes he can align himself only with the subjective objector. As the regulation is written and applied, therefore, he is not within its ambit, and the Secretary's denial of his application for separation is lawful.

To escape the strictures of the regulation, the accused contends that its disregard of the selective conscientious objector is "arbitrary and unreasonable" and constitutes invidious discrimination which deprives him of his constitutional right to equal protection of the laws. His argument takes no account of his status as a person already subject to military order and discipline.

Previously, we considered the effect of status in connection with the right of Congress to treat civilian conscientious objectors subject to the draft differently from persons who voluntarily enter the armed services and

thereafter become conscientious objectors. We consider now whether different objections of conscience can legally be treated differently for the purpose of determining eligibility for separation from the military. So that we may have an appropriate factual background for our consideration of the question, we pause to detail some of the circumstances of this case.

The accused voluntarily entered the military service in 1955. Between that time and the day he violated Colonel Hansen's order, the United States has faced actual armed conflict or the threat of hostilities on a number of occasions. These include the continuing armistice in Korea, the Lebanon invitation, the U-2 affair, the Cuban missile crisis, the Dominican Republic incident, and the current conflict in Vietnam. In addition, Federal troops have been used in domestic crises. The accused's conscience responded to none of these confrontations but Vietnam. Although it may fairly be inferred the accused knew and understood that the habits of mind of the man in combat are as important as his military tactics, the selectivity of his conscience allowed him to teach psychology and "leadership and . . . motivation" to persons reasonably expected to participate directly in the United States effort in Vietnam. Similarly, although accused's conscience dictated that he not act as instructor to train others to fly F-100 aircraft, it did not compel him to refuse the preliminary training required to qualify him as an instructor.

Our emphasis of the selectivity of the accused's conscience is not intended in any way to denigrate the sincerity or the genuineness of his beliefs. The record compellingly demonstrates both sincerity and genuineness. What we have said, however, makes it apparent that a selective conscience in the military creates enormous problems.

Suppose the accused's conscience had viewed the overflight of Soviet territory by the United States high-altitude aircraft, such as the U-2, as an illegal and immoral intrusion into Soviet air space, would he have had the right to refuse further military service in support of a Government that had recourse to such tactics because that right was accorded to one who had scruples of conscience against all military duty? Or suppose the accused's conscience had been opposed to use of the armed forces to carry out constitutional desegregation of public schools directed by Federal court order, and he, therefore, rejected the legality and morality of President Eisenhower's utilization of Federal troops for that purpose in Little Rock, Arkansas, in 1959. Would that kind of selectivity of conscience entitle him to release from the service on the same basis as one whose conscience commanded him to perform no military duty?

An affirmative answer to the questions we pose would, in our opinion, be tantamount to the substitution of private judgment for the judgment of public officers entrusted with carrying out the powers of Government. Earlier, we rejected this kind of exaltation of private judgment in connection with the right of Congress to differentiate between civilian conscientious objectors claiming exemption from service and persons who become conscientious objectors while in a military status. Similar considerations apply in this instance, especially when the person opposed to all war or all military service is contrasted with the selective objector. The "universal pacifist" may, in fact, agree with the justice and morality of the Government's position in a particular confrontation or cause, but his conscience still prevents him from bearing arms in support of the country and its causes. His claim for exemption is single and definitive, not multiple and myriad; and it is irrelevant to all causes and confrontations. On the other hand, the bases of exemption claimed by the selective objector are inseparable from the daily decisions of constituted authority. These differences, in our opinion, reflect not merely a difference of degree in the objections of conscience, as appellate defense contend, but a difference in kind. The

**493**

substantiality of the differences justifies a difference of treatment. We hold, therefore, that the regulation is lawful, and that the Secretary's denial of the accused's application for separation under its provisions was correct.

For purposes of this appeal appellate defense counsel dropped trial contentions that the accused had been denied procedural due process. This decision was correct.

Our decision as to the nature of the military status and the bases for termination thereof demonstrates that we are not dealing with a private right, but with a Government conferred privilege as to which "it has traditionally been held that notice and hearing are not constitutionally required." Cafeteria Workers v McElroy, 367 US 886, 895, 6 L Ed 2d 1230, 81 S Ct 1743 (1961), rehearing denied, 368 US 869, 7 L Ed 2d 70, 82 S Ct 22 (1961).

Under the regulation, applications for separation are based on information furnished by the applicant. In addition, the applicant is asked to submit the names and addresses of witnesses who may possess relevant information. The application is forwarded to the Secretary through the applicant's normal chain of command, and every commander in the chain is asked to make a recommendation on the application, with reasons for his recommendation. Since the regulation does not expressly confine the intermediate commander to the information contained in the application, it is possible that in any given case a recommendation might be based upon new information not known to the accused. Fairness of procedure would indicate that, at least before the final decision by the Secretary, the applicant be apprised of unfavorable information not previously known to him and be accorded the opportunity to file a rebuttal or explanation of the adverse matters. United States v McCoskey, 12 USCMA 621, 31 CMR 207; United States v Vara, 8 USCMA 651, 25 CMR 155. We are not persuaded, however, that a personal hearing before the Secretary is essential to an informed decision on the matter. The Supreme Court of the United States and this Court consider petitions for review on the record, and without oral argument. The record before us discloses no infirmity of such substance as to impugn the fundamental fairness of the procedure established by the regulation.

Since we have concluded that the Secretary's ruling on the accused's application for separation from the service is legally unassailable, it follows that Colonel Hansen's order was lawful. Accordingly, we affirm the decision of the board of review.

Judge DARDEN concurs.

FERGUSON, Judge (concurring in the result):

I concur in the result.

It is well settled that no claim of conscientious objection may be founded on constitutional principles. United States v Macintosh, 283 US 605, 75 L Ed 1302, 51 S Ct 570 (1931). It is a matter of legislative grace. Parrott v United States, 370 F2d 388 (CA 9th Cir) (1966); Richter v United States, 181 F 2d 591 (CA 9th Cir) (1950).

The governing congressional enactment applies only to potential inductees into the armed services and extends classification as a conscientious objector only to those who are "conscientiously opposed to participation in war in any form." Military Selective Service Act of 1967, 50 USC App (1964 edition, Supp. III) §§ 454(a), et seq., particularly § 456(j). As accused was an Air Force officer of some years' service, he obviously lies without the statute's terms. Cf. United States v Scheunemann, 14 USCMA 479, 34 CMR 259.

Nevertheless, the Air Force, recognizing the dilemma in which those who become conscientiously opposed to war after their voluntary entry into service might find themselves, promulgated AFR 35-24, dated March 8, 1963, which permits relief to persons so circumstanced. Again, however, grant of relief is predicated on conscientious ob-

494

jection to participation in war in any form, the regulation adopting the statutory standard of classification for its disposition of in-service conscientious objectors.

The accused concedes he is not within the regulatory or statutory standard, for he aligns himself only with the "selective" or "subjective" objector, who reserves the right to object to a particular war, though not to others. As such, he is not entitled to the relief which he sought from the Secretary, nor to plead its denial as a defense to disobedience of a lawful order.

Accordingly, I believe we need not involve ourselves in the lengthy discussion of what occurred in connection with his petition for departmental relief or the effect thereof on his trial. He admittedly is not entitled to the remedy which he sought.

Accordingly, I concur in the affirmance of the decision of the board of review.