UNITED STATES, Appellant

v

DAVID R. LARSON, Specialist Five,
U. S. Army, Appellee

20 USCMA 565, 43 CMR 405

No. 23,634

May 14, 1971

Captain Thomas W. Phillips argued the cause for Appellant, United States. With him on the brief were Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway, and Captain Richard K. Bank.

*Captain Joseph V. Aprile, II*, argued the cause for Appellee, Accused. With him on the brief were *Colonel George J. McCartin, Jr.*, and *Captain Robert B. Harrison, III.*

## Opinion

QUINN, Chief Judge:

Before arraignment on a charge of wrongful disobedience of an order calculated to effect transfer to an overseas replacement station, the accused moved to dismiss the charge on the ground he had been deprived of "due process" in the processing of his application for discharge as a conscientious objector. The motion was denied. Later, the accused requested an instruction to the court members that "a finding of not guilty must be returned" if they determined that a particular procedure provided by Army Regulation 635–20 for processing of an application for discharge as a conscientious objector had not been followed. That request was denied. The accused was convicted as charged and sentenced to a dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for three years. On review, the United States Army Court of Military Review ordered a limited hearing before a military judge "on the question of the legality of the order," with further direction for alternative proceedings depending upon the determination made by the judge. Pursuant to Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867, the Army Judge Advocate General certified sequential questions, beginning with whether the Court of Military Review was "correct in remanding the case for a limited rehearing on the legality of the order."

At the hearing on the motion to dismiss, civilian defense counsel expressly disclaimed challenge of the substantive correctness of the Secretary of the Army's denial of the application for discharge. He indicated that defense objection to the application proceedings was solely to the fact that, in "processing" the application, "the government" did not comply with a particular provision of AR 635–20. Acknowledging that the "point" presented "a perfectly legitimate . . . defense," the law officer (now the military judge) ruled that he was "not going to decide" the merits, but, if justified by the evidence, he would "give it to the court on instructions." Insisting that there was "no factual dispute," defense counsel pressed for at least "an interlocutory ruling"; that request was also denied. As a result, testimony as to the asserted defect in the processing of the application was presented in open court.

When both sides had rested, the law officer held an out-of-court hearing on proposed instructions. The hearing included a discussion of the evidence as to the processing of the accused's application. Defense counsel summarized the defense position as follows: The "sum and substance" of the defense contention was that the regulation was not "complied with" because the accused had been interviewed by the chaplain, a requirement of the regulation, *before* instead of *after*, the accused had prepared and submitted the completed application form. The accused's application was dated January 30, 1969; it had three enclosures, one of which was a statement by the chaplain, dated January 21, 1969, that he had "interviewed" the accused "about his desire to be classified as a conscientious objector." The chaplain's statement listed six reasons to support his recommendation that the application be disapproved. Defense counsel construed the regulation, the pertinent provisions of which are set out in the Appendix to this opinion, to require that the chaplain have the application "before him" at the interview; he argued that the failure to observe this requirement was a denial of "due process."

The chaplain testified that, at the time he interviewed the accused, his

"policy" had been to allow an applicant to confer with him before formal submission of his "papers"; then, after the application was filed, it would be "sent over" to him for "a final determination." However, a different policy was in effect at the time of trial; under that, the chaplain did not interview an applicant until he had "actually put . . . [his material] into writing." Although he admitted it was "easier" to interview an applicant with a written statement of the applicant's views before him, the chaplain maintained that it was "[n]ot necessarily" difficult to conduct the interview without written material. As the regulation concerned him, the chaplain believed he had complied with it "in detail."

Considering the requested instruction in light of the evidence, the law officer concluded no issue for the court members was raised. Accordingly, he denied the defense request that the court members be instructed that the accused must be acquitted unless they determined beyond a reasonable doubt that the chaplain was not required to have "a copy of the applicant's written application before him at the time of the interview."

In United States v Noyd, 18 USCMA 483, 40 CMR 195 (1969), this Court recognized that, within the framework of the regulation, unlawful action by the Secretary on an application for discharge as a conscientious objector could invalidate a dependent military order to the applicant. The Court of Military Review determined that the validity of a dependent order could be as much affected by procedural illegality in the Secretary's action as by its substantive illegality. United States v Noyd, supra, at page 494, supports that conclusion. See also United States v Chilcote, 20 USCMA 282, 43 CMR 122 (1971); Bluth v Laird, 435 F2d 1065 (CA4th Cir) (1970); United States ex rel Donham v Resor, 436 F2d 751 (CA 2d Cir) (1971). The correctness of this aspect of the Court of Military Review's

decision does not, however, necessarily require the conclusion that the law officer's misconception of his responsibility to consider the validity of the Secretary's action necessitates a further hearing by him. The law officer had allowed the accused to present his evidence on the subject, and, as defense counsel conceded, there was no "factual dispute" as to the alleged irregularity in the procedure. Under the circumstances, the court could have itself "directly decide[d] the substance of the [legal] question." United States v Noyd, supra, at page 488.

Assuming without deciding, that the accused has properly interpreted the regulation, two preliminary issues are raised by his contention. The first is whether he waived the alleged irregularity by including without objection the chaplain's recommendation in his own formal application. The second is the effect of the difference between an irregularity in procedure by a person charged only with responsibility for a recommendation as to approval or disapproval of the application and the procedure utilized by the Secretary in making his ruling on the merits of the application. Compare United States v Nichelson, 18 USCMA 69, 39 CMR 69 (1968) and United States v Simpson, 16 USCMA 137, 36 CMR 293 (1966) with Bluth v Laird, supra. We put aside these questions, however, to reach the merits of the issue as framed by the accused.

We start with the fact that the chaplain did interview the accused in connection with the application, and he did, as the regulation required, submit his recommendation with his reasons. It is also undisputed that after the application form was completed by the accused, the chaplain reexamined his recommendation in the light of the completed application. It was not contended at trial and it is not asserted in this Court that any of the matter set out by the accused in his application was materially different from the subject matter of the

interview with the chaplain. Thus, the happenstance of conducting the interview before formal submission of the application did not result in a recommendation predicated upon mistaken or incomplete information. Cf. United States v Schuller, 5 USCMA 101, 104, 17 CMR 101 (1954). A deviation from prescribed procedure which neither impairs the purpose of the procedure nor presents a fair risk of prejudice to a substantial right of an interested party is not such error as to vitiate the entire proceeding. United States v Nichelson, supra; United States v Smith, 8 USCMA 178, 23 CMR 402 (1957); cf. United States v Dean, 20 USCMA 212, 43 CMR 52 (1970); Bluth v Laird, supra, at pages 1071–1072.

In light of the interpretation of the regulation advanced by the accused, the course followed by the chaplain was at most a technical violation of the regulation. The chaplain's testimony indicates that the "final determination" as to his recommendation was not made until he reviewed the completed application. The factual predicate for his recommendation was, therefore, unimpaired. Nor does it appear from the record that the alleged irregularity deprived the accused of the opportunity to challenge the substance of the chaplain's recommendation before it reached the Secretary. On the record, the alleged error cannot, from any rationally conceivable standpoint, be regarded as denying the accused due process in the proceedings leading to the denial by the Secretary of his application for discharge as a conscientious objector.

The first certified question is answered in the negative. This answer makes it unnecessary to reach the other questions certified for review.

The decision of the United States Army Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army for resubmission to the Court of Military Review for further proceedings consistent with our conclusion.

APPENDIX

"ARMY REGULATION
No. 635–20

HEADQUARTERS
DEPARTMENT OF
THE ARMY
Washington, D. C.,
23 January 1969

PERSONNEL SEPARATIONS
CONSCIENTIOUS OBJECTION

3. Policy.

. . . . .

d. Final determination on all requests for discharge based on conscientious objection (to include those listed in b above) will be made at Headquarters, Department of the Army.

4. Procedure: a. Military personnel will submit applications for discharge by reason of conscientious objection on DA Form 2496 (Disposition Form) to their immediate commanding officers. The individual requesting discharge will include in his application, or as an inclosure thereto, the information indicated below as the minimum required for consideration of his request. The individual may submit such other information as desired.

(1) *General information.*
(a) Full name.
(b) Military service number/SSAN.
(c) Selective service number.
(d) Service address.
(e) Permanent home address.
(f) Name and address of each school and college attended, together with the dates of attendance, and the type of school (public, church, military, commercial, etc.).

. . . . .

(2) *Religious training and belief.*

(a) A description of the nature of belief which is the basis of claim.
(b) Explain how, when, and from whom or from what source the applicant received the training and acquired the belief which is the basis of claim.
(c) The name and present address of the individual upon whom the applicant relies most for religious

guidance in matters of conviction relating to claim.

(d) A statement as to circumstances, if any, under which the applicant believes in the use of force.

(e) A description of the actions and behavior in the applicant's life which, in his opinion, most conspicuously demonstrates the consistency and depth of religious convictions which gave rise to claim.

(f) A statement as to whether applicant has ever given public expression, written or oral, to the views expressed in his application as the basis for claim. If so, specify when and where.

. . . . .

(4) *References.*

. . . . .

b. Immediately upon receipt of a request for discharge on the grounds of conscientious objection, the individual's commanding officer will fully advise and counsel him concerning the provisions of section 3103, title 38, United States Code. . . .

c. An individual requesting discharge will receive a counseling interview by a chaplain and a psychiatric interview by a psychiatrist (or medical officer if a psychiatrist is not available). The chaplain will submit a report of the interview to include comments on the sincerity of the applicant in his belief and an opinion as to the source of the belief. The psychiatrist will submit a report of psychiatric evaluation indicating the presence or absence of any psychiatric disorder which would warrant treatment or disposition through medical channels.

d. The applicant will be afforded an opportunity to appear in person (with counsel retained by him, if he desires) before an officer in the grade of 0–3, or higher, who is knowledgeable in policies and procedures relating to conscientious objector matters.

(1) After permitting the applicant to be heard in support of his application and making such other inquiry into the merits of the application as he considers appropriate, the officer will enter his recommendation and the reasons therefor into the file.

. . . . .

e. DD Form 1589 (Department of Defense Summary Sheet for Review of Conscientious Objector Application) will be completed.

f. The application for discharge, together with the inclosure(s), DD Form 1589, reports of interviews, and the officer's recommendation or waiver required by d above will be forwarded directly from division or installation level to The Adjutant General, ATTN: AGPO, Department of the Army, Washington, D. C. 20315, in triplicate (original and two copies).

. . . . .

(2) Subsequent forwarding comments on DA Form 2496 will include reommmendation for approval or disapproval and any other remarks that may be pertinent."

DARDEN, Judge (concurring in the result):

My views that the lawfulness of an order must be determined separately from a Secretary's denial of an application for discharge are fully set out in United States v Stewart, 20 USCMA 272, 276, 43 CMR 112 (1971). A summary of my position is that:

". . . [T]here is no constitutional right to refuse military orders because of conscientious objection; no statutory provision makes conscientious objection or a Secretary's improper denial of a conscientious objector's discharge application a defense in a military trial and the regulation permitting submission of discharge applications by in-service conscientious objectors contains no authority for the litigation of this issue at a court-martial."

I continue to believe, as I expressed in *Stewart,* that:

". . . [A]ction by the Secretary of a military department on such an application, even if erroneous, does not operate to end the obligation of a member of the armed forces to obey orders that are otherwise law-

**569**

ful. Such an obligation does not end until the member is separated by competent orders. An *ex parte* determination by a member that his rights have been denied is no more a justifiable excuse for refusing to comply with an otherwise lawful order than is a member's contention that he has been unlawfully inducted a defense to an unauthorized absence (United States v Scheunemann, supra), or a prisoner's belief that his sentence is irregular or voidable a defense to prosecution for escape. Aderhold v Soileau, 67 F2d 259 (CA5th Cir) (1933); Godwin v United States, 185 F2d 411 (CA8th Cir) (1950); Bayless v United States, 141 F2d 578 (CA9th Cir) (1944). 'The idea that a soldier's tenure in the service may be terminated by him at will, or that a selectee may enter the army on a trial basis and stay if he likes it or leave if he does not, is wholly foreign to the military concept in time of war, and diametrically opposed to the necessary policy of any sovereign.' Mayborn v Heflebower, 145 F2d 864, 866 (CA5th Cir) (1944)."

I would answer the first certified issue in the negative.

FERGUSON, Senior Judge (dissenting):

I dissent.

In United States v Phifer, 18 USCMA 508, 510, 40 CMR 220 (1969), this Court unanimously declared:

"'. . . (W)e are bound by purely factual determinations of the board of review (United States v Judd, 10 USCMA 113, 27 CMR 187 [1959]; United States v Remele, 13 USCMA 617, 33 CMR 149 [1963]), *unless such conclusions are arbitrary and capricious, so as to amount to an abuse of discretion* (United States v Wheatley, 10 USCMA 537, 28 CMR 103 [1959]). . . .' (United States v Baldwin, 17 USCMA 72, 77, 37 CMR 336 [1967].) (Emphasis supplied.)"

See also United States v Smith, 17 USCMA 427, 38 CMR 225 (1968), and cases cited at page 430.

In the case at bar, the Court of Military Review, sitting *en banc* with twelve judges in agreement,[1] clearly found as a fact that the law officer, by restricting the scope of defense counsel's inquiry, "precluded judicial determination" of the defense contention that the accused was denied "administrative due process in processing appellant's application for conscientious objector status under Army Regulation 635–20, dated 22 January 1969." Even the two other judges who wrote separately agreed on this question. Their departure from their brothers' opinion was over the nature of the rehearing which was ordered by the majority to correct the law officer's error.

The majority of the Court of Military Review noted, in their opinion, that:

". . . The military judge refused to hear the motion or receive evidence in support thereof stating that he would submit the matter to the court-martial as a factual issue.

"Thereafter, the defense to establish its allegation of procedural irregularities called as witnesses two of the officers within the command charged with making administrative determinations under the regulation. Counsel attempted to determine the extent of the officers' understanding and expertise concerning the regulation. The military judge restricted the scope of counsel's inquiry, ruling that the witnesses' assertion that they had complied with the regulation closed the matter. The military judge did not permit the defense to introduce appellant's application into evidence. At the out-of-court hearing on instructions individual counsel contended the evidence est[a]blished a failure to comply with the regulation and a denial of administrative due process which infested the entire conscientious objector processing and subsequently the or-

[1] Fourteen judges of the Court of Military Review participated in the hearing.

der charged. The military judge ruled the matter was not in issue."

Since the finding of the Court of Military Review is amply supported by the record of trial and is not "arbitrary and capricious," we are bound by that determination. United States v Phifer, supra.

In United States v Noyd, 18 USCMA 483, 40 CMR 195 (1969), this Court held that military judges are empowered to rule on the *legality* of a Secretarial decision on an application for discharge as a conscientious objector, when the validity of a subsequent order depends upon that decision. As we said in *Noyd*, at page 492:

". . . If the Secretary's decision was illegal, the order it generated was also illegal. See United States v Gentle, 16 USCMA 437, 37 CMR 57 [1966]."

Cf. United States v Goguen, 20 USCMA 527, 43 CMR 367 (1971). Such a determination cannot be properly made unless there is before the judge a complete record of the proceedings. This record should reflect that at each level of activity, in the processing of the application, the terms of the regulation have been assiduously adhered to, and that findings of fact and conclusions based thereon, have been made by those charged with the particular responsibility. Since it is upon these findings and conclusions that the particular service Secretary makes his determination, this same information will serve as the basis for the judge's ruling as to the correctness of the proceedings and the sufficiency of the evidence to sustain the Secretary's action.

Despite the law officer's curtailment of the defense examination of the chaplain, the following colloquy demonstrates that the chaplain utilized an improper standard in determining, as required by Army Regulation 635–20, that the accused was insincere in his claim of conscientious objection:

"LAW OFFICER: Well, Chaplain, I don't know what this all about, but do you remember this man's case?

"A: I only remember it, sir, on the basis of what I have here in writing.

"LAW OFFICER: Well, did you comply with the regulations?

"A: Yes, sir.

"LAW OFFICER: Very well, I have no further questions. That's AR 635–20 as you're required to do by regulation?

"A: All I have to do, sir, is interview the man, determine whether he is basing it on God, and this man does not. He bases it upon moral principles, not upon God, but on his own—

"LAW OFFICER: I don't want to hear all that. I just wanted to know if you complied with your requirements of AR 635–20 as concerns you as a chaplain.

"A: Yes, sir, in detail."

In United States v Seeger, 380 US 163, 184, 13 L Ed 2d 733, 85 S Ct 850 (1965), the Supreme Court, in speaking of the religious belief required for classification as a conscientious objector under the Universal Military Training and Service Act, 50 USC App, § 456(j) (1958 ed);[2] stated that the standard to be utilized by the examiner,

". . . is essentially an objective one, namely, does the claimed belief occupy the same place in the life of the objector as an orthodox belief in God holds in the life of one clearly qualified for exemption?"

---

[2] The purpose of Army Regulation 635–20 is stated as follows:
 "1. Purpose. This regulation sets forth the policy criteria, and procedures for disposition of military personnel who, *by reason of religious training and belief,* claim conscientious objection to participation in war in any form." [Emphasis supplied.]
Cf. United States v Noyd, 18 USCMA 483, 491, 40 CMR 195 (1969).

In the recent case of Welsh v United States, 398 US 333, 26 L Ed 2d 308, 90 S Ct 1792, 1796 (1970), the Court iterated its holding in *Seeger*. The *Welsh* decision clearly demonstrates that the correct standard does not require the applicant's belief to be based upon a Supreme Being, as contended by the chaplain in this case.

". . . What is necessary under *Seeger* for a registrant's conscientious objection to all war to be 'religious' within the meaning of § 6(j) is that this opposition to war stem from the registrant's moral, ethical, or religious beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions. . . . Because his beliefs function as a religion in his life, such an individual is as much entitled to a 'religious' conscientious objector exemption under § 6(j) as is someone who derives his conscientious opposition to war from traditional religious convictions."

The holding of the Supreme Court in *Seeger*, as amplified in Welsh, demonstrates the failure of the chaplain to accord proper consideration to the accused's claim as a conscientious objector.

I would answer the first certified question in the affirmative. Inasmuch as the accused's contention that he was improperly denied status as a conscientious objector goes to the heart of his defense to the charge of disobedience of a lawful order (United States v Noyd, supra), a rehearing on the merits is required. In such an event, the remaining certified questions need not be answered.