UNITED STATES

v.

**Samuel Scott IMLER, 513 76 2663, Airman Recruit (E-1), U.S. Navy.**

**NMCM 83 3124.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence adjudged 6 May 1983.

Decided 26 March 1984.

LTCOL M.W. Lucas, USMC, Appellate Defense Counsel.

LT Philip J. Shebest, JAGC, USNR, Appellate Defense Counsel.

CDR Richard A. Monteith, JAGC, USN, Appellate Government Counsel.

Before EOFF, C.J., and RAPP and MIELCZARSKI, JJ.

MIELCZARSKI, Judge:

Contrary to his pleas, appellant was convicted by a military judge sitting as a general court-martial of three instances of unauthorized absence in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886. The adjudged sentence extended to forfeiture of $100.00 pay per month for six months and a letter of reprimand. The convening authority approved the findings but reduced the sentence to forfeitures of pay as adjudged. The record was forwarded to the Office of the Judge Advocate General for examination under Article 69, UCMJ, 10 U.S.C. § 869, and the Judge Advocate General has in turn forwarded it for review by this Court pursuant to Article 66, UCMJ, 10 U.S.C. § 866, with attention to be given to the following issues:

I

DOES THE EXISTENCE OF A VOIDABLE ENLISTMENT CONTRACT, COUPLED WITH A REQUEST TO VOID IT BY ONE OF THE PARTIES COMPEL A DIFFERENT RESULT UNDER THE FACTS IN THIS CASE FROM THAT IN UNITED STATES V. JARRELL, 12 M.J. 917 (N.M.C.M.R.1982)?

## II

IN LIGHT OF THE DETERMINATION BY THE MILITARY JUDGE THAT THE GOVERNMENT ALLOWED AN UNREASONABLE AMOUNT OF TIME TO ELAPSE FROM THE ACCUSED'S FORMAL REQUEST FOR DISCHARGE UNTIL HE COMMENCED HIS UNAUTHORIZED ABSENCE, WAS THE DENIAL OF THE DEFENSE MOTION TO DISMISS DUE TO LACK OF *IN PERSONAM* JURISDICTION CORRECT? *UNITED STATES V. DOUSE,* 12 M.J. 473 (C.M.A. (1982); *UNITED STATES V. HUTCHINS,* 4 M.J. 190 (C.M.A.1978).

Appellant has in turn made two assignments of error which incorporate those issues. We find the court-martial possessed *in personam* jurisdiction over appellant and affirm. The first issue as posed by the Judge Advocate General of the Navy is answered in the negative; the second issue is answered in the affirmative. Our reasons follow.

Appellant enlisted in the regular component of the United States Navy on 11 December 1980 for a period of four years. His enlistment options provided for an occupational specialty school guarantee in the "OJ" category. Under the guarantee appellant was promised assignment to a class A school in AE, AW, EM, or IC fields as the needs of the Navy required. Continuing participation in the guaranteed program was conditioned on appellant remaining eligible for the required security clearance and the physical qualifications of the program, and provision was made for rechecking these qualifications during recruit training and subsequent schooling. Ineligibility would result in reassignment or separation at the option of the Navy if it was caused by factors known by appellant and not included in his application for enlistment. On the other hand, ineligibility resulting from factors not known to him or disclosed by him in his enlistment application gave appellant the options of requesting reassignment to another program in which a vacancy existed and for which he was qualified or

an honorable discharge. A final condition of the contract provided that, if the guaranteed program training stopped because of disciplinary reasons or failure to meet the Navy's academic or professional standards during any phase of appellant's training, he would be reassigned duties as the needs of the Navy required.

On 26 February 1981 appellant began AW (Air) School in Pensacola, Florida. He was found physically qualified for the school, but an examination of appellant's ears 'caused medical personnel to be suspicious of his ability to perform flight duties. A notation of such findings was made in appellant's health record. On 6 March appellant was not able to "pop" his ears during a pressure chamber exercise. A medical examination that same day resulted in appellant being placed on medical hold. The record is not clear but appellant claims that he was also withdrawn from the rolls of AW (Air) School on this date. Appellant immediately initiated the first of what he alleges were numerous request chits to be discharged from the Navy.

On 19 March appellant had an operation to drain his ears. After the operation appellant and two other students in similar circumstances were taken to the senior chief of the command who informed them that appellant's case had not been decided but that the two other students would be discharged. On 24 March a notation was made in appellant's medical record that he also had a perforated eardrum. On 2 April medical personnel determined that appellant was not physically qualified for air school and recommended a physical evaluation to determine his fitness for further duty.

Overlapping this medical determination that appellant was not physically qualified for aviation programs was the first of several disciplinary infractions by appellant which resulted in a succession of nonjudicial punishments for him. On 9 March appellant was found in wrongful possession of more than one validated armed forces identification card. He received nonjudicial punishments on 7 May, 29 May, and 14 July

for this offense and several other offenses which postdate the medical determination that he was not physically qualified for aviation programs.

On 1 September 1981 his unit notified personnel detailers in Washington that appellant was dropped from AW (Air) School because of his nonjudicial punishments and that he was available for reassignment. The message notification did not mention his medical disqualification and omitted any reference to appellant's demands for discharge. Thereafter, appellant was transferred to the USS FORRESTAL (CV–59) for duty. Appellant reported to the FORRESTAL where he told several petty officers and a chief that the Navy had breached his enlistment contract. No action was taken on his complaints. On 16 November 1981 appellant began the first of three unauthorized absences which resulted in this general court-martial.

■ The statutory basis of court-martial jurisdiction over active duty members of the armed forces is contained in Article 2 of the Uniform Code of Military Justice, 10 U.S.C. § 802. The amended Article 2, applicable in appellant's case, provides that members of a regular component of the armed forces are subject to court-martial jurisdiction. Article 2(a)(1), UCMJ. The oath of enlistment, when taken by a person who has the capacity to understand the significance of enlisting and who is voluntarily enlisting, effects a change of status from civilian to member of the armed forces and confers valid court-martial jurisdiction. Article 2(b), UCMJ. In addition the Article provides that, notwithstanding any other provision of law, a person serving with the armed forces who submitted voluntarily to military authority, met the mental competency and minimum age qualifications required by statute at the time of voluntary submission to military authority, received military pay or allowances, and performed military duties is subject to court-martial jurisdiction until such person's active service has been terminated in accordance with law or regulations promulgated by the Secretary concerned. Article

2(c), UCMJ. As a general rule court-martial jurisdiction over active duty enlisted members ceases on discharge from the service or other termination of that status. Paragraph 11a, *Manual for Courts-Martial, 1969 (Rev.)*.

■ In addition to Article 2 of the Code, both civilian and military case law have long recognized the proposition that military service is not a mere contract relationship but a matter of status. *See Bell v. United States*, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961); *United States v. Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890); *Dickenson v. Davis*, 245 F.2d 317 (10th Cir.1957), *cert. denied*, 355 U.S. 918, 78 S.Ct. 349, 2 L.Ed.2d 278 (1958). *United States v. Fitzpatrick*, 14 M.J. 394 (C.M.A. 1983); *United States v. Handy*, 14 M.J. 202 (C.M.A.1982); *United States v. Noyd*, 18 U.S.C.M.A. 483, 40 C.M.R. 195 (1969); *United States v. Barrett*, 3 U.S.C.M.A. 294, 12 C.M.R. 50 (1953); *United States v. Downs*, 3 U.S.C.M.A. 90, 11 C.M.R. 90 (1953). In *United States v. Grimley*, 137 U.S. at 151, 11 S.Ct. at 55, the Supreme Court of the United States explained the special nature of the enlistment contract:

> Enlistment is a contract, but it is one of those contracts which changes the *status*, and where that is changed, no breach of the contract destroys the new *status* or relieves from the obligations which its existence imposes.

Once assumed, military status continues throughout the stated term of the enlistment agreement unless the individual is actually discharged or the status otherwise is changed in accordance with the provisions of law. *United States v. Fitzpatrick, supra; United States v. Handy, supra; United States v. Noyd, supra.* The status is not and cannot be severed by breach of contract unfortified by a proper authoritative action. *Dickenson v. Davis, supra*, at 319.

In view of the present state of Article 2 and the aforementioned case precedents, we believe appellant's reliance on *United States v. Douse*, 12 M.J. 473 (C.M.A.1982), and *United States v. Hutchins*, 4 M.J. 190 (C.M.A.1978), is misplaced. The *Douse* and

*Hutchins* cases involve situations where the term of the enlistment agreement had expired and the member was held over the expiration date under protest to complete disciplinary proceedings. In this limited context the Court of Military Appeals announced a theory of jurisdiction under which the Government is allowed a reasonable time to take appropriate action before personal jurisdiction is divested. *See also Taylor v. United States,* 711 F.2d 1199 (3d Cir.1983); *but see United States v. Douse, supra,* at 481 (Everett, C.J., concurring in the result).

The Court of Military Appeals has not directly addressed the question of *in personam* jurisdiction in the context of appellant's theory that a material breach of an unexpired enlistment contract accompanied by a demand for discharge and passage of time operate to divest jurisdiction. The Courts of Military Review, however, have held that a member's right to rescission of an enlistment contract does not divest jurisdiction, and enforcement of the right is primarily administrative in nature. *United States v. Jarrell,* 12 M.J. 917 (N.M.C.M.R. 1982); *United States v. Davis,* 8 M.J. 575 (A.C.M.R.1979).

We believe that this approach is both legally sound and equitable to service members. A member of the naval service who believes he has reason to complain about the enforcement of the terms of his enlistment agreement has a comprehensive administrative grievance procedure available to him. Options available to resolve wrongs or enforce rights include a written request for administrative action (Article 1108, U.S. Navy Regulations), a request mast with his commanding officer (Article 1107, U.S. Navy Regulations), a request for redress of a wrong committed by a superior (Article 1106, U.S. Navy Regulations), a complaint of wrong against his commanding officer (Article 138, UCMJ, 10 U.S.C. § 938), and a petition to the Board for Correction of Naval Records (10 U.S.C. § 1552). In addition, a service member may sue in the federal district courts to enforce rights under an enlistment agreement where he is dissatisfied with the resolution of an enlistment agreement dispute made by a military department.

In the instant case the essential facts are not in dispute. Appellant voluntarily enlisted in the regular component of the United States Navy for a period of active duty and took the oath of enlistment. He thereby assumed the status of a member of a regular component of the armed forces within the meaning of Article 2, UCMJ. No discharge or other release by proper authority altered his status. He is therefore a person subject to the Code and amenable to trial by court-martial.

We conclude that the resolution of appellant's demands for discharge after his disqualification from his guaranteed training and before the expiration of his enlistment period is a matter for administrative determination subject to possible litigation in the federal courts. His demands for discharge, whether or not meritorious, cannot operate to divest the court-martial jurisdiction conferred under Article 2 of the Code.

The findings and sentence as approved on review below are affirmed.

Chief Judge EOFF and Judge RAPP concur.