**UNITED STATES, Appellee,**

v.

**Thaddeus L. DOUSE, Sergeant, U.S. Air Force, Appellant.**

**No. 39,818.**
**ACM 22671.**

U. S. Court of Military Appeals.

April 19, 1982.

For Appellant: *Captain Alexander S. Nicholas* (argued); *Colonel George R. Stevens, Major Wade B. Morrison* (on brief); *Colonel Larry G. Stephens.*

For Appellee: *Captain Richard O. Ely, II* (argued); *Colonel James P. Porter* (on brief); *Lieutenant Colonel Bruce R. Houston.*

## OPINION

COOK, Judge:

We are asked to decide whether the Government retained jurisdiction over the accused after the expiration of his term of enlistment. 10 M.J. 251. The military judge found it did; we agree and affirm.

It is important at the outset to point out that this Court has only limited authority in this area. We cannot independently assess the credibility of witnesses or attach more or less weight to particular items of evidence, as our personal conviction dictates. We can only inquire whether as a matter of law evidence of record and the inferences that can properly be drawn therefrom support the trial judge's determination that the Government "mov[ed] along at a fairly rapid pace" to attach court-martial jurisdiction by commencement of action with a view to trial. *See* Article 67(d), Uniform Code of Military Justice, 10 U.S.C. § 867(d).

At the time of the events in issue, the accused was stationed at Clark Air Base, Republic of the Philippines. His initial separation date was November 28, 1978, but he voluntarily extended it to April 28, 1979. In due course, a port call was scheduled for him on March 27, 1979, for his return to the United States for discharge. However, he was apprehended for wrongful possession of marihuana on March 15. The port call and accused's request for early separation were cancelled and he was placed on administrative hold on March 16. These actions are not challenged by the accused. Resultantly, April 28, 1979, is the acknowledged date of expiration of accused's term of enlistment.

On April 5, the accused was identified as being involved in the larceny which formed the basis of the charge of which he stands convicted.[1] On the following day he was interviewed by the security police and the investigation was closed. On April 9, the accused received Article 15, UCMJ, 10 U.S.C. § 815, punishment for possession of marihuana. The larceny investigation was reopened on April 19 and closed again on April 24.[2] The next day the investigation was forwarded to the accused's squadron commander. Charges were preferred on June 1.

Between mid-April and June 1, 1979, the accused requested separation through his First Sergeant and, on another occasion prior to his termination date, he requested discharge from his commanding officer. The accused's testimony is indeed to the effect that in his several conversations with the First Sergeant and his meeting with the commanding officer, he indicated he "wanted to be separated." However, the stipulated testimony of the First Sergeant is materially different. According to the sergeant, the accused "came to the orderly room about three times and ... complained about being retained at Clark, but" the accused "never demanded that he be sepa-

---

1. The accused was tried by general court-martial and was convicted, despite his pleas, of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. He was acquitted of a related charge of burglary, in violation of Article 129, UCMJ, 10 U.S.C. § 929. The approved sentence extends to a bad-conduct discharge, confinement at hard labor for 2 years, forfeiture of $350.00 pay per month for 24 months, and reduction to Airman Basic.

2. This case is a companion to *United States v. Bennett*, 12 M.J. 463 (C.M.A.1982). The peculiar facts surrounding discovery of the involvement in the larceny of the several participants are detailed there.

rated." The stipulated testimony of the commander is also different from that of the accused. It is to the effect that the accused "approached . . . [the commander] about when he would be able to leave Clark Air Base"; nothing in the stipulation indicates that the accused requested separation from the service. The stipulated testimony and other testimony by the accused support a finding by the trial judge that not until May 14 did the accused indicate dissatisfaction with his retention in the service, as distinguished from dissatisfaction with continuation of duty at Clark Air Base. On that date, the accused conferred with the military lawyer who later represented him at trial. He told the lawyer he "was supposed to have been discharged," but "there was no paperwork [on it] or anything voluntarily extending . . . [his] tour of service in the Air Force." As a result of his consultation with counsel, the accused went to the Consolidated Base Personnel Office "to request to be separated."

We granted review (10 M.J. 251) on the following issue:

WHETHER THE COURT–MARTIAL LACKED PERSONAL JURISDICTION OVER THE APPELLANT AS THE GOVERNMENT FAILED TO TAKE ACTION WITH A VIEW TO TRIAL PRIOR TO THE EXPIRATION OF THE APPELLANT'S TERM OF ENLISTMENT.

Article 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1), provides for continuation of court-martial jurisdiction over "[m]embers of a regular component of the armed forces, *including those awaiting discharge after ex-*

*piration of their terms of enlistment*" (emphasis supplied). Accused's counsel contend that the "awaiting discharge" clause was intended by Congress only "to permit the completion of court-martial actions [begun before expiration of the term of enlistment] against accused members whose terms of enlistment expire during the proceedings." From that premise, counsel conclude that expiration of a service member's term of enlistment precludes exercise of court-martial authority over him for an offense committed before such expiration, unless action with a view to trial by court-martial is commenced before the expiration date, as provided in paragraph 11d, Manual for Courts-Martial, United States, 1969 (Revised edition).[3] If they are correct, this Court was wrong to hold, as it has, that "[a] person subject to the Code continues in service until the formalities of a discharge or release from active duty have been met or he objects to his continued retention and a reasonable time expires without appropriate action by the Government." *United States v. Hutchins*, 4 M.J. 190, 192 (C.M.A. 1978); most recently reaffirmed in *United States v. Wheeley*, 6 M.J. 220 (C.M.A.1979).

Appellate defense counsel refer to three comments in the legislative background materials of the Uniform Code to support their construction of the "awaiting discharge" clause of Article 2(a)(1). Two of the references are to a comment in the respective reports of the House and Senate Armed Services Committees on the bill recommended to Congress. The comment is incapable of supporting a construction having the meaning attributed to it by counsel. The comment appears in each report in a

---

**3.** Paragraph 11*d*, Manual for Courts-Martial, United States, 1969 (Revised edition), states:

Jurisdiction having attached by commencement of action with a view to trial—as by apprehension, arrest, confinement, or filing of charges—continues for all purposes of trial, sentence, and punishment. If action is initiated with a view to trial because of an offense committed by an individual before his official discharge—even though the term of

enlistment may have expired—he may be retained in the service for trial to be held after his period of service would otherwise have expired. Similarly, if jurisdiction has attached by the commencement of action before the effective terminal date of self-executing orders, a person may be held for trial by court-martial beyond that terminal date. See also Article 2(1).

section providing analysis of the bill. Each report reads as follows:

| House Report No. 491 on H.R. 4080, 81st Cong., 1st Sess., p. 10 (1949) | Senate Report No. 486 on H.R. 4080, 81st Cong., 1st Sess., p. 7 (1949) |
|---|---|
| Article 2. Persons subject to the code | Article 2. Persons subject to the code |
| Paragraph (1) is an adaptation of AW 2(a).[4] The term "inductees" has been added to make the paragraph consistent with section 12 of Public Law 759, "the Selective Service Act of 1948." | Paragraph (1) is an adaptation of AW 2(a) and is consistent with section 12 of the Selective Service Act of 1948. |

*See Index and Legislative History, Uniform Code of Military Justice* (1950).

Part of a letter by Senator Pat McCarran, Chairman of the then Committee on the Judiciary, to Senator Millard E. Tydings, Chairman of the Senate Armed Services Committee, constitutes the third reference relied upon by appellate defense counsel. The letter is included in the record of the hearings by a Senate Subcommittee. Hearings on S. 857 and H.R. 4080 Before a Subcommittee of the Senate Armed Services Committee, 81st Cong., 1st Sess. 102 (1949). It refers to Senator McCarran's "long" interest in the courts-martial system and the "intensive study" he had made of the Senate bill. Plainly, it expresses only the Senator's personal recommendations, not those of the Committee on the Judiciary. As to Article 2, Senator McCarran said (*id.* at 103):

> Article 2 lists the persons who are subject to the code. Included are persons "awaiting discharge after the expiration of their terms of enlistment." The commentary of the Committee on a Uniform Code of Military Justice found on page 5 of Uniform Code of Military Justice— Text, References, and Commentary * * * merely states that paragraph 1 in which this provision appears "is an adaptation of A. W. 2 (a)." However, a perusal of that section fails to disclose any such authority to hold a man subject to the Articles of War after the expiration of an enlistment. If this is to remain in the code it should be qualified to make certain that the code applies only to person-

nel held after the expiration of their enlistments pursuant to the legal order of a court-martial as provided in paragraph (7). [Article 2(a)(7), UCMJ, provides for continuing jurisdiction over "[p]ersons in custody of the armed forces serving a sentence imposed by a court-martial."]

Since the "awaiting discharge" provision was enacted without change, the Armed Services Committees and Congress obviously were not persuaded by Senator McCarran's letter—either to entirely preclude continuing jurisdiction after expiration of a term of enlistment or to limit such jurisdiction in that instance to persons in military custody while serving a court-martial sentence.

Eight of the nearly 30 witnesses who testified on the bill at the House Subcommittee Hearing commented on Article 2. Many recommended elimination of or changes to various subdivisions of the Article, including subdivision (1). No one, however, questioned the literal language or the facial meaning, of the "awaiting discharge" clause. Hearings on H.R. 2498 Before a Subcommittee of the House Armed Services Committee, 81st Cong., 1st Sess. 683, 691, 706–09, 743–48, 768, 771, 799, 810, 817, 825, 833–35 (1949) (hereafter House Hearings). *See also* summary of the recommendations in House Report No. 491, *supra* at 4–5, 9. The concept has long been a part of military law, although not expressed in a statute.

In *In re Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890), the Supreme Court noted that enlistment in an armed force is more than a contract obligation; it creates a status. That status does not end *eo instanti* on "expiration of the regular period of enlistment." *United States v. Dickenson*, 6 U.S.C.M.A. 438, 448, 20 C.M.R. 154, 164 (1955), *jurisdiction sustained sub nom. Dickenson v. Davis*, 245 F.2d 317 (10th Cir. 1957), *cert. denied*, 355 U.S. 918, 78 S.Ct. 349, 2 L.Ed.2d 278 (1958). Continuation of the status continues amenability to the Uniform Code and trial by court-martial de-

---

**4.** Article of War 2(a), Sec. 1, Chap. 2, Act of June 4, 1920 (41 Stat. 787), as amended in succeeding years through Act of June 24, 1948 (P.L. 759, 80th Cong., 2d Sess.).

spite expiration of the term of enlistment. *United States v. Hout,* 19 U.S.C.M.A. 299, 41 C.M.R. 299 (1970).

█ Attachment of court-martial jurisdiction before expiration of the term of enlistment, as provided in paragraph 11*d* of the Manual, *supra,* is but one example of involuntary retention beyond the established date of separation. With worldwide deployment of American forces abroad, which was well known to Congress when it enacted the Uniform Code, recurrent alerts and crises situations must be expected to require cancellation or postponement of the scheduled departure of many service persons from a foreign country for the United States for discharge. Such postponements of departure are likely to result in postponements of discharge beyond the service members' respective terms of enlistment. Within the United States, a service member while processing for discharge may be seriously injured so as to necessitate postponement of discharge to a time past the expiration date of the term of enlistment. *Cf.* Article 2(a)(5). Flood or other national disaster may also compel postponement of the discharge of service members because the medical and administrative personnel regularly assigned to process them for discharge are needed to care for victims of the disaster. As long as a service member is "awaiting discharge after expiration of . . . [his term] of enlistment," he remains subject to court-martial for an offense committed before or after expiration of his enlistment, without regard to whether action has been taken with a view to trial. *Cf. United States v. Smith,* 4 M.J. 265, 267 (C.M.A. 1978) (Fletcher, C. J., concurring in the result).

How long may a person remain "awaiting discharge" after expiration of his term of enlistment? As indicated earlier, *Hutchins* held that the condition "continues . . . until the formalities of a discharge . . . have been met, or" the person "objects to his continued retention and a reasonable time

expires without appropriate action by the Government." 4 M.J. at 192.

█ If the Government fails to discharge the accused on the date fixed by his term of enlistment, and the accused does not object, the Government cannot deny the accused the privileges, prerogatives, and emoluments of his status and rank; conversely, the service member cannot set aside his duties and responsibilities as a person belonging to "a regular component of the armed forces." Article 2(a)(1); *see United States v. Noyd,* 18 U.S.C.M.A. 483, 40 C.M.R. 195 (1969). Should a member object to retention beyond the term of enlistment, as the accused did here, he cannot just walk away on the date of expiration of his enlistment, saying that his status has ended and he is no longer in the service. However, this Court has held that the member's objection has legal significance. It operates to circumscribe the right of the military to subject him to trial by court-martial for a violation of the Code. Under the limitation, the Government has only "a reasonable time . . . [to take] appropriate action." *United States v. Hutchins, supra* at 192. What kind of action is appropriate?

█ Obviously, actual discharge is an appropriate action[5]; so is "action with a view to trial," as provided in paragraph 11*d*, Manual, *supra,* before expiration of the "reasonable time" allowed the Government. Our cases on continuing jurisdiction, therefore, are complementary, not contradictory. They manifest two bases for assertion of jurisdiction beyond the term of enlistment. One is the provision of Article 2(a)(1) that a service member "awaiting discharge after" the term of enlistment remains subject to trial by court-martial under the Code. The second basis is the taking "of action with a view to trial" sufficient to attach jurisdiction before the occurrence of an event that would otherwise terminate the service member's amendability to trial by court-martial. Two situations are comprehended within this category: (a) The service mem-

5. We need not consider here what remedies the service member has for improper retention beyond expiration of his term of enlistment.

ber objects to retention beyond his term of enlistment, but, within a "reasonable time" thereafter, the Government acts "with a view to trial" in respect to an offense committed before expiration of the term of enlistment or one committed after that date but within the "reasonable time" period; or (b) the Government acts "with a view to trial" in respect to an offense committed before expiration of the term of service, and thereafter, the accused has demanded discharge (*United States v. Hout, supra*), or is, in fact, discharged. *United States v. Robertson*, 8 U.S.C.M.A. 421, 24 C.M.R. 231 (1957); *United States v. Speller*, 8 U.S.C. M.A. 363, 24 C.M.R. 173 (1957).

■ Application of both bases for continuing jurisdiction requires an understanding of the concept of "action with a view to trial." Application of basis (a) also requires an understanding of the term "reasonable time." As the accused affirmatively requested his discharge in this case, both the concept and the term require consideration.

In *United States v. Hudson*, 5 M.J. 413 (C.M.A.1978), the majority opinion points out that two standards were propounded to test "the sufficiency of action to satisfy the requisites for continuing jurisdiction"; and both were considered. The opinion states the situation as follows:

> In *United States v. Smith, supra*, two general definitions were propounded by which to assess the sufficiency of action to satisfy the requisites for continuing jurisdiction. The . . . [majority] opinion noted that the action must be *"official"* and of a nature that "authoritatively signaled . . . [the sovereign's] intent to impose its legal processes upon the individual." *Id.* at 267. The separate concurring opinion posited that the action must be of a kind to provide the accused with "sufficient notice to give rise to legal remedy in the event of a wrong committed in the process of justice."

*Id.* at 419.

I agree fully with the implication of Judge Perry's opinion in *Smith* that action taken to continue jurisdiction need not be communicated to the accused to give it le-

gal efficacy. For example, attachment of jurisdiction occurs on the "filing of charges" (para. 11*d*, Manual, *supra*), which can occur a considerable time before the accused is apprised of them. *See* Article 30(b), UCMJ, 10 U.S.C. § 830(b). Mr. Felix Larkin, Chairman of the working group that developed the Uniform Code bill for the Morgan Committee on the Uniform Code of Military Justice, advised the House Subcommittee, that an accused may be absent from the command, with or without authority, at the time of filing of the formal charges, and so he cannot be apprised of them at that time. House Hearings at 983. We are satisfied, therefore, that the concept of jurisdiction—attaching actions as explicated in paragraph 11*d* does not demand that notice be given the accused as a prerequisite to their legal vitality. As to the term "reasonable time," it is undeniably elastic. But its elasticity does not deprive it of rational containment. In that respect, it is like the requirement that individual military counsel desired by an accused be "reasonably available," Articles 32(b) and 38(b), UCMJ, 10 U.S.C. §§ 832(b) and 838(b); or like the requirement of proof "beyond reasonable doubt" for a finding of guilty. Article 51(c), UCMJ, 10 U.S.C. § 851(c). Necessarily, determination of what constitutes a reasonable period of time for accomplishment of a specified action requires consideration of the totality of the relevant circumstances. That was the test this Court used in its first consideration of a congressional command that designated government action be completed within a period of time not measured by the calendar. That instance involved Article 10, UCMJ, 10 U.S.C. § 810, which provides that, "[w]hen a . . . [service member] is placed in arrest or confinement . . . immediate steps . . . [must] be taken . . . to try him or to dismiss the charges and release him." Initially, the Court measured the immediacy of the Government's post-confinement steps by the totality of circumstances that bore upon the bringing of the accused to trial. *United States v. Hounshell*, 7 U.S.C.M.A. 3, 21 C.M.R. 129 (1956).

Later, when it became apparent that a stricter prophylactic rule was needed to guard against violation of Article 10, the Court introduced a rebuttable presumption that delay in excess of 90 days between imposition of restraint upon the accused's freedom of movement and trial constituted a violation of Article 10 that was prejudicial to the accused. *See United States v. Driver,* 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974). So few attachment-of-court-martial-jurisdiction cases appear in the reports of this Court and the service Courts of Military Review[6] that we discern no need for adoption of a similar time-lapse presumption in determination of the "reasonable time" requirement.[7]

Paragraph 11*d* of the Manual notes that the "filing of charges" constitutes "action with a view to trial" sufficient to continue court-martial jurisdiction beyond the date of expiration of service. Neither the Uniform Code nor the Manual defines specifically the "filing of charges." The phrase, however, appears in the comments of several persons in the record of the hearings before the House Subcommittee on the Uniform Code in connection with the receipt of charges by a summary court-martial authority of the command for the tolling of the statute of limitations. House Hearings at 1036, 1040–43. It may be that the term is used synonymously with the "preferring of charges," which consists of signing them with a sworn certification of personal knowledge or investigation of the facts "and that they are true in fact to the best of . . . [affiant's] knowledge and belief." Article 30(a), UCMJ, 10 U.S.C. § 830(a). *Cf. United States v. Smith, supra* at 266. Both actions in this case were taken on June 1, 1979. Thus, the period between what the trial judge could have found to be accused's first objection to retention past his extended term of enlistment would be

that between May 14 and June 1, a total of 18 days.

The trial judge concluded that the Government had proceeded "at a fairly rapid pace." As the trial judge had shortly before referred to the statement in *Hutchins* that after accused objects to continued retention, he remains subject to trial by court-martial until "a reasonable time expires without appropriate action by the Government," 4 M.J. at 192, we construe the judge's conclusion to mean that he found the period stated to be reasonable. Certainly, the Government's action in filing the charges rather than processing the accused for discharge was appropriate. Others, more anxious about the possibility of losing jurisdiction over the accused, might have proceeded more expeditiously. We cannot say, however, that, as a matter of law, the action taken here, in a major command in a foreign country, was too long delayed. We, therefore, sustain the trial judge's ruling and affirm the decision of the United States Air Force Court of Military Review.

EVERETT, Chief Judge (concurring in the result):

"Members of a regular component of the armed forces, *including those awaiting discharge after expiration of their terms of enlistment,*" are subject to the Uniform Code of Military Justice. Article 2(a)(1), 10 U.S.C. § 802(a)(1) (emphasis supplied). The plain meaning of this language—which was not contained in the Articles of War—is that military jurisdiction over the person continues as long as military status exists. *Cf. In re Grimley,* 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890).

In *United States v. Noyd,* 18 U.S.C.M.A. 483, 491, 40 C.M.R. 195, 203 (1969), this Court remarked:

The obligation to obey a lawful order cannot be, and is not, as a matter of law,

---

6. Allowing for a 5 percent margin of error in computer search, only 45 cases appear to have considered the subject. This Court alone has, to date, docketed more than 40,000 regular appeals.

7. We do not intend the analogy to Article 10, UCMJ, 10 U.S.C. § 810, cases to suggest that the excess of 90-day period in those cases is appropriate for all retention cases. *See* text discussion, 12 M.J. 473, 479.

terminated on the mere occurrence of a condition or circumstance that might justify separation from the service. On the contrary, the obligation to obey continues until the individual is actually discharged in accordance with the provisions of law.

In this instance—and consistent with Article 2(a)(1)—the Court was recognizing that, even if a servicemember is entitled to be discharged, he retains his military status, is subject to military obligations, and retains his military benefits until he *is* in fact discharged.[1]

The Manual for Courts-Martial, United States, 1969 (Revised edition), recognized the general rule that court-martial jurisdiction ceases on discharge from the service or other termination of military status. *See also* para. 10, Manual for Courts-Martial, U.S. Army, 1949. As to termination of a term of service, the present Manual provides in paragraph 11*d* :

> *Effect of termination of term of service.*
>
> Jurisdiction having attached by commencement of action with a view to trial—as by apprehension, arrest, confinement, or filing of charges—continues for all purposes of trial, sentence, and punishment. If action is initiated with a view to trial because of an offense committed by an individual before his official discharge—even though the term of enlistment may have expired—he may be retained in the service for trial to be held after his period of service would otherwise have expired. Similarly, if jurisdiction has attached by the commencement of action before the effective terminal date of self-executing orders, a person may be held for trial by court-martial beyond that terminal date. See also Article 2(1).

The first sentence of this paragraph affirms the principle that if there is affirmative action with a view toward trial by court-martial, jurisdiction to conduct such a trial will continue despite a change in military status. This principle apparently has been recognized in our opinions.[2] *See United ed States v. Smith*, 4 M.J. 265, 267 (C.M.A. 1978); *United States v. Rubenstein*, 7 U.S. C.M.A. 523, 22 C.M.R. 313 (1957). The second sentence of paragraph 11*d* is unclear. In authorizing retention in the service for trial if action is initiated with a view to trial, this Manual language might be read to imply that court-martial jurisdiction terminates if a servicemember is retained—whatever the reason for retention—beyond his term of enlistment where there has been no affirmative action with a view to trial before the end of the enlistment. However, if this negative implication is accepted, this Manual language would dictate that court-martial jurisdiction terminates with the end of an enlistment when a servicemember is retained on active duty thereafter with his express consent, or for medical reasons, or to make good lost time, or for other like reasons. In light of the "general rule" stated in paragraph 11*a* of the Manual—and, even more importantly, prescribed by Article 2(a)(1) of the Code—I conclude instead that the second and third sentences of paragraph 11*d* are only intended to furnish specific authority to retain a servicemember on duty, rather than to amend the usual rule that military status confers court-martial jurisdiction even when the servicemember would be entitled to a discharge.

Admittedly, some of this Court's opinions indicate that, if a servicemember is not separated promptly after his enlistment has expired and he has requested a discharge, military jurisdiction is lost. *Cf. United States v. Hutchins*, 4 M.J. 190 (C.M.A.1978). Such a view judicially creates an exception to the plain language of Article 2(a)(1). Significantly, Congress recently disap-

---

1. Where self-executing orders for separation are involved, the situation would be different.

2. Moreover, *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955), is inapplicable since there the efforts to

proved a similar exception by amending Article 2 of the Uniform Code to eliminate the doctrine of recruiter misconduct, under which military jurisdiction was disallowed because of the fault of government representatives in procuring an accused's enlistment.[3] 93 Stat. 810. To rule now that court-martial jurisdiction is lost if the Government is at fault in failing to discharge a servicemember who is entitled to be separated will take the Court down the same dismal path from which Congress has just attempted to lead us.

Of course, a servicemember retained on duty beyond the end of his enlistment has several remedies available. He may submit a complaint under Article 138, UCMJ, 10 U.S.C. § 938. He may apply to the Board for the Correction of Military Records, *see* 10 U.S.C. § 1552. He may also seek extraordinary relief from the Court of Military Review or our Court. *See Robison v. Abbott,* 23 U.S.C.M.A. 219, 49 C.M.R. 8 (1974). Moreover, "the writ of habeas corpus has long been recognized as the appropriate remedy for servicemen who claim to be unlawfully retained in the armed forces." *Parisi v. Davidson,* 405 U.S. 34, 39, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972).[4] Furthermore, a servicemember's unreasonable retention in the Armed Forces after his enlistment has expired is a circumstance to be considered in determining whether he has been prejudiced by pretrial delays. *Cf. Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).[5]

I do not condone failure of the Armed Services to discharge servicemembers promptly at the end of an enlistment—even without any specific demand for such a discharge. However, neither the Constitution nor the Congress has prescribed that military jurisdiction is lost under such circumstances. Indeed, in cases arising overseas such a rule might preclude trial of some heinous crimes by the only American forum possessing subject-matter jurisdiction.

Since I conclude that—whether or not the Air Force was dilatory in dealing with appellant's demands to be discharged—his acts were punishable under the Uniform Code until a change actually occurred in his military status, I join in affirming the decision of the Court below.

FLETCHER, Judge (dissenting):

I conclude I must disagree with my Brothers; I use as a basis the law well stated by this Court.

A concise review of the facts is essential. Appellant's initial separation date was November 28, 1978. This date was voluntarily extended by appellant until April 28, 1979. On application by appellant for an early separation date, a new separation date was set for March 29, 1979. Appellant was apprehended for suspected marihuana possession on March 15, 1979. On March 16, 1979, he was placed on administrative hold and his early separation was cancelled. Article 15 action was administered for the marihuana possession on April 9, 1979.

prosecute only commenced long after the accused had returned to the civilian community.

3. This doctrine, now repudiated by Congress, is often identified by reference to two leading cases—*United States v. Catlow,* 23 U.S.C.M.A. 142, 48 C.M.R. 758 (1974), and *United States v. Russo,* 1 M.J. 134 (C.M.A.1975).

4. Perhaps an action for damages can be maintained for the wrongful retention in the service. *But see* 28 U.S.C. § 2680.

5. The argument for prejudice is especially strong if the servicemember is not in a pay status after his enlistment has expired. *See United States v. Davenport,* Dkt. No. 40,318, (C.M.A.1982), where after oral argument the Court remanded for a determination whether

during the extension of his enlistment appellant had been in a pay status. There the Navy Court of Military Review had noted in its unpublished opinion that Davenport was not in a pay status after his term of service ended, citing DODPAYMAN § 10316*b.* Of course, the legality of retaining a servicemember involuntarily in a non-pay status would seem to be subject to question on statutory (*see* Art. 57(a), Uniform Code of Military Justice, 10 U.S.C. § 857(a)) and constitutional grounds. *See* U.S.Const. amends. V and XIII. In that event, the Armed Services may be compelled to elect between release from duty or retaining an accused in a pay status. *See Rhoades v. United States,* 668 F.2d 1213 (Ct.Cl., 1982).

The larceny charged in this prosecution occurred on April 5, 1979, at Clark Air Base, in the Republic of the Philippines. Appellant was interviewed the following day concerning the larceny. Appellant continued to be on administrative hold after his Article 15 action through the completion of his trial on November 5, 1979.

Charges were preferred on June 1, 1979, by the commanding officer after having the investigation report for his consideration for thirty-six days since April 25, 1979. Three times between mid-April and June 1, 1979, appellant requested separation through his First Sergeant. On one other occasion prior to his termination date appellant requested discharge from his commanding officer. On May 14, 1979, separation procedures were initiated and subsequently terminated by order of the staff judge advocate's representative.

All of the decisions start from the same foundation, Article 2(a)(1), Uniform Code of Military Justice, 10 U.S.C. § 802(a)(1), which in pertinent part states:

The following persons are subject to this chapter:

(1) Members of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment.

From this fundament, the Court has clearly developed its rule determining personal jurisdiction over military personnel who prior to the established date of discharge are suspected of a legal offense, but against whom no formal action is taken by the Government before that date.

Judge Cook writing for a unanimous court in *United States v. Hutchins*, 4 M.J. 190, 191, 192 (C.M.A.1978), stated, after quoting the portion of Article 2(a)(1) quoted above:

In construing the quoted provision, the Court previously held that "[m]ere expiration of the regular period of enlistment does not alter a serviceman's status as a person subject to the Uniform Code." *United States v. Dickenson*, 6 U.S.C.M.A. 438, 448, 20 C.M.R. 154, 164 (1955), *jurisdiction sustained, sub nom. Dickenson v.*

*Davis*, 245 F.2d 317 (10th Cir. 1957), *cert. denied*, 355 U.S. 918, 78 S.Ct. 349, 2 L.Ed.2d 278 (1958). *Accord, United States v. Johnson*, 6 U.S.C.M.A. 320, 20 C.M.R. 36 (1955). The service-person may, however, demand discharge upon termination of his period of enlistment, but a demand made after the preferral of charges is too late. *United States v. Hout*, 19 U.S.C.M.A. 299, 41 C.M.R. 299 (1970). *See* paragraph 11*d*, Manual for Courts-Martial, United States, 1969 (Revised edition). The general principle is that military jurisdiction continues after the end of the term of enlistment if such jurisdiction has previously attached. Winthrop, *Military Law and Precedents* 90, 91 (2d ed. 1920 Reprint).

.     .     .     .     .

Congress defined court-martial jurisdiction in Article 2[ (a) ](1), UCMJ, to include persons "awaiting discharge after expiration of their terms of enlistment." A person subject to the Code continues in service until the formalities of a discharge or release from active duty have been met or he objects to his continued retention and a reasonable time expires without appropriate action by the Government.

Two months after *United States v. Hutchins, supra*, Judge Perry, writing for himself and Judge Cook in *United States v. Smith*, 4 M.J. 265, 267 (C.M.A.1978), stated (footnote omitted):

It is not necessary for trial actually to have begun prior to the discharge date in order for jurisdiction to have attached. What is necessary, however, is that some affirmative action with a view toward trial must have been taken before that date. Paragraph 11*d*, Manual for Courts-Martial, United States, 1969 (Revised edition), lists examples of such actions: apprehension, arrest, confinement, or filing of charges. The Government correctly urges that this list is illustrative, not all-inclusive. But it appears to this Court that whatever action is relied upon as having been adequate to invoke the military's jurisdiction over the person before

his military status dissolves, the action must be such as to form a definitive point in time. It must be such that one can say that at some precise moment the sovereign had authoritatively signaled its intent to impose its legal processes upon the individual. For that to be the case, that action, whatever it is, must have been *official.*

In October of 1978, Judge Cook writing for himself and Judge Perry in *United States v. Hudson,* 5 M.J. 413, 419 (C.M.A. 1978), succinctly set out the majority rule announced in *United States v. Smith, supra,* as well as my minority concept:[1]

> In *United States v. Smith, supra,* two general definitions were propounded by which to assess the sufficiency of action to satisfy the requisites for continuing jurisdiction. The ... [majority] opinion noted that the action must be *"official"* and of a nature that "authoritatively signaled ... [the sovereign's] intent to impose its legal processes upon the individual." *Id.* at 267. The separate concurring opinion posited that the action must be of a kind to provide the accused with "sufficient notice to give rise to legal remedy in the event of a wrong committed in the process of justice.

1. Judge Cook correctly digests my opinion concurring in the result in *United States v. Smith,*

Again, Judge Cook, writing for the majority in *United States v. Wheeley,* 6 M.J. 220, 222 (C.M.A.1979), opined (footnotes omitted):

> This Court has long recognized that enlistment in an armed force establishes a status which does not terminate by the mere expiration of the term of enlistment. *United States v. Hout,* 19 U.S.C.M.A. 299, 41 C.M.R. 299 (1970), and cases cited therein. The principle has recently been reaffirmed in *United States v. Smith,* 4 M.J. 265 (C.M.A.1978), and *United States v. Hutchins,* 4 M.J. 190 (C.M.A. 1978). As we said in *Hutchins* :
>
> > A person subject to the Code continues in service until the formalities of a discharge or release from active duty have been met or he objects to his continued retention and a reasonable time expires without appropriate action by the Government.
>
> Examining the facts of this case, I conclude that there was both a demand for discharge by appellant and an absence of affirmative action on the part of the sovereign signaling a view toward trial. Consequently personal jurisdiction over this appellant was divested.