UNITED STATES

v.

James H. BRUNTON, 289 62 9668, Operations Specialist Second Class (E–5), U.S. Navy.

NMCM 86 1523.

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 18 Oct. 1985.

Decided 5 March 1987.

.

LCDR Robert J. Smith, JAGC, USN, Appellate Defense Counsel.

LT J. Cunyon Gordon, JAGC, USN, Appellate Defense Counsel.

LCDR David A. Sabot, JAGC, USN, Appellate Government Counsel.

Before MITCHELL, Senior Judge, and GLADIS and CASSEL, JJ.

PER CURIAM:

At a general court-martial composed of officer members, the appellant was found guilty of conspiracy to distribute cocaine, distribution of cocaine, and failing to report the distribution of cocaine. His sentence, comprising confinement for one year, total forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge, was approved by the convening authority as adjudged.

Before this Court, appellant asserts that (1) the military judge erred by failing to dismiss the charges for (a) lack of personal jurisdiction and for (b) denial of appellant's right to a speedy trial; (2) the military judge erred by failing to instruct the members on the elements of the offense appellant allegedly failed to report and that that underlying offense had to be proved beyond a reasonable doubt; (3) the military judge erred by failing to instruct the members on the definition of "conduct to the prejudice of good order and discipline" as those terms applied to the offense of distribution of cocaine under Article 134; and (4) he may not be convicted of failure to report the distribution of cocaine where in his reporting of the offense he would have incriminated himself. We will discuss the assignments of error *seriatim.*

I

FAILURE TO DISMISS CHARGES FOR LACK OF PERSONAL JURISDICTION AND FOR DENIAL OF RIGHT TO SPEEDY TRIAL

A. *Personal Jurisdiction*

■ Appellant's assertions with respect to the court-martial's lack of personal jurisdiction over him are based upon his sudden recall to active duty subsequent to his commencement of a period of terminal leave in anticipation of his end of active obligated service (EAOS).

The record reveals that the date of appellant's end of active obligated service was 31 March 1985. In anticipation thereof, on 3 March 1985, the appellant detached the USS RICHARD L. PAGE on terminal leave. Before detaching on that day, appellant completed the check-out procedures at the command's Personnel Office, which included signing his discharge papers (the DD Form 214) and arranging for the receipt of his last two pay checks. Appellant then went to his home in Columbia, South Carolina, where, on 12 March, he began his employment with a civilian establishment. On 28 March 1985, appellant received his DD 214 discharge papers when he went home for lunch and picked up his mail.

When he returned to work after lunch that day, he received a phone call from the ship's legal officer informing him that he was ordered back to the RICHARD L. PAGE, that his terminal leave had been canceled, and that he was going to be charged with larceny and drug offenses. This telephonic message was followed up by a telegram delivered on that same day which informed the appellant that he was ordered to return to the ship not later than 2400, 31 March 1985, that his terminal leave was canceled, and that he was being extended on active duty pending criminal investigation. Appellant reported back aboard the RICHARD L. PAGE at about 1730 on Sunday, 31 March. The next day, 1 April, a page 13 entry was made in appellant's service record book, informing him that he was being "[i]nvoluntarily held beyond normal date of expiration of enlistment to await disposition of military investigation." Appellate Exhibit 2. The form was signed by the accused, acknowledging that he "consent[ed] to be retained in the naval service beyond the normal date of expiration of enlistment...." *Id.*

Based on these facts, the appellant made a motion to dismiss the charges on the grounds that the court-martial lacked personal jurisdiction over him. The military judge denied the motion. Relying on *United States v. Howard,* 20 M.J. 353 (C.M.A. 1985), the appellant now maintains that the military judge's ruling denying his motion was incorrect because his "[d]ischarge [was] effective upon delivery of the discharge certificate" and, thus, the court-martial's exercise of jurisdiction over his person subsequent to this discharge was inappropriate and invalid. *Howard* at 354. The Government, on the other hand, contends that the military judge's ruling on the motion was correct since (1) clear steps were taken to maintain jurisdiction over the appellant prior to the expiration of his enlistment; (2) the appellant had received notice of his retention on active duty before the date of the expiration of his enlistment; and (3) the appellant had never *lawfully* been issued a discharge certificate.

In the *Howard* case, *supra,* the Court of Military Appeals (COMA) reversed the Army Court of Military Review's reversal of the military judge's ruling that delivery of a discharge certificate to Howard had terminated court-martial jurisdiction over his person. Judge Cox's exposition of the facts in the *Howard* case indicates that Private Howard was ordered to report to a Separation Transfer Point on 22 August where he was to be administratively discharged on that date, that Howard did so report on the morning of 22 August, that he was there issued a General Discharge Certificate and a DD Form 214, that he collected his travel pay and turned in his military identification card, and that by 9:45 that morning he had signed out of his command and was on his way home. Finding out later that afternoon that Private Howard was being investigated for commission of a military offense, the responsible commander directed that Howard's discharge order be revoked. This revocation order was prepared at approximately 10:00 p.m. on 22 August, but the appellant was not notified of this action until approximately nine days later on 31 August. COMA found that, despite the existence of an Army Regulation which would have permitted him to retain Howard within his command until midnight on the date of the discharge,

> the commander made an informed decision to allow [Howard] to be discharged at an earlier time when he authorized him to pick up his discharge certificate, as well as his DD Form 214 and travel pay, and allowed him to be released from the boundaries of the military reservation before any action was taken with a view to trial by court-martial.

*Howard,* 20 M.J. at 354–355. Based on this finding, COMA concluded that "a court-martial no longer had *in personam* jurisdiction to try [Howard] for the charged offenses." *Id.* at 355.

We find the facts of the instant case to be clearly distinguishable from the facts of *Howard.* Unlike Private Howard, who completed his check-out procedures and received his discharge papers while on post

on the same date his separation was to take effect, the appellant in this case received his discharge papers a few days prior to the effective date of his separation while in a terminal leave status at his home far from his military organization. Furthermore, while Private Howard did not receive notice of revocation until nine days *after* the delivery of his discharge papers and the expiration of his enlistment, the appellant was notified by phone and telegram within hours after receiving his discharge papers and three days *prior* to his actual separation date that his leave was canceled and that he would be retained on active duty pending criminal investigation. Also, unlike Private Howard, whose commanding officer had given him a valid authorization to pick up his discharge certificate, the appellant in the instant case received a discharge certificate which was mailed without proper authority, contrary to the express provisions of 10 U.S.C. § 1169[1] and NAVMILPERSCOMINST 1900.1a, dated 10 February 1983.[2] "Court-martial jurisdiction over active duty personnel ordinarily ends on delivery of a discharge certificate or its equivalent to the person concerned *issued pursuant to competent orders.*" Discussion, Rule for Courts-Martial (R.C.M.) 202(a), Manual for Courts-Martial, United States, 1984, Part II at 11 (emphasis added). Additionally, at the time of his notification on 28 March that he was being retained on active duty, the appellant had not yet received his final pay check and was not expecting to receive it until 30 March.[3] Moreover, as stated above, upon his return to his command, the appellant signed a service record book entry stating

that he "consent[ed] to be retained in the naval service beyond the normal date of expiration of enlistment" for the purpose of awaiting the disposition of a military investigation. Finally, unlike Private Howard, the appellant "was made aware of the charges and the intent of military authorities" to subject him to court-martial before his EAOS. *United States v. Morrison,* 22 M.J. 743, 745 (N.M.C.M.R.1986). It is well established that "the Government can preserve jurisdiction over an accused by taking 'an action with a view to trial' before his EAOS." *Id.* (quoting *United States v. Douse,* 12 M.J. 473, 478 (C.M.A. 1982)). "Any acts which authoritatively presage a court-martial, when viewed in the light of the surrounding circumstances, are sufficient." *Id.* (quoting *United States v. Self,* 13 M.J. 132 (C.M.A.1982)). Upon consideration of the facts delineated above, we find the actions taken by the Government in the instant case to be so sufficient.

In sum, we find that where a discharge certificate is forwarded to and received by a Naval servicemember in a terminal leave status a few days prior to his or her actual EAOS date, where that certificate indicates that separation from the Naval Service is effective as of that future EAOS date, where the certificate is forwarded to the servicemember precipitously and not in accordance with regulations prescribing procedures for the forwarding of discharge documentation to members in such status, where the servicemember is informed prior to that EAOS date that his or her terminal leave is revoked and that he or she is to return to active duty pending investigation of criminal charges, and where, upon re-

---

1. 10 U.S.C. § 1169 provides as follows:
 No regular enlisted member of an armed force may be discharged before his term of service expires, except—
 (1) as prescribed by the Secretary concerned;
 (2) by sentence of a general or special court-martial; or
 (3) as otherwise prescribed by law.

2. Paragraph 1(c)(4) of enclosure (1) of NAV-MILPERSCOMINST 1900.1a, which specifically addresses the situation *sub judice* where the servicemember's separation is effected at the end of a period of separation leave, provides in

pertinent part, "The authorizing official shall not sign or distribute the form [the DD Form 214] until the actual date of separation."

3. 10 U.S.C. § 1168 provides in pertinent part as follows:
 (a) A member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, *and his final pay or a substantial part of that pay,* are ready for delivery to him or his next of kin or legal representative. (Emphasis added).

turning to active duty after receiving such notification, the servicemember apparently consents to extension of active duty beyond that EAOS date, discharge is not effected and court-martial jurisdiction is not lost at the time of the delivery of that discharge certificate. Accordingly, appellant's assignment of error is without merit.

B. *Speedy Trial*

 Appellant's assertion that the military judge erred in denying his motion to dismiss for lack of speedy trial is likewise without merit. Involuntary extension of active duty does not constitute restraint within the definition of R.C.M. 707. There was no demand for speedy trial. Since, as appellant concedes, he was neither confined nor restricted upon his return to active duty on 31 March, and since trial commenced approximately 73 days subsequent to the preferral of the charges, appellant merits no relief.

## II

### INSTRUCTIONAL ERROR

A. *Failure To Instruct On Elements Of Offense Appellant Allegedly Failed To Report.* This assignment of error is mooted by our disposition of appellant's last assignment of error below.

██ B. *Failure To Instruct On The Definition Of "Conduct To The Prejudice Of Good Order And Discipline."* This assignment of error is without merit. Appellant failed to object to the omission of this instruction at trial; the omission of the instruction does not rise to the level of plain error. R.C.M. 920(f).

## III

### FAILING TO REPORT AN OFFENSE AND SELF–INCRIMINATION

██ Appellant was found guilty of the following three specifications: (1) conspiring with Fire Control Technician Third Class STANKE to distribute cocaine to Sonar Technician Seaman KATAFIAS sometime during June, 1984; (2) distributing cocaine to KATAFIAS in June, 1984; and (3) violating Article 1139 of U.S. Navy Regulations by failing to report an offense which he had observed—the wrongful distribution of cocaine from STANKE to Petty Officer WHORL sometime during June or July, 1984. In his final assignment of error, appellant asserts that the finding of guilty to this third offense is inappropriate as it compels him to make disclosures of an incriminating nature and is thus violative of his right against self-incrimination.

Besides the above offenses of which he was found guilty, the appellant was also charged with, but found not guilty of, conspiring with STANKE to distribute cocaine to and of distributing cocaine to WHORL, allegations derived from the same incident underlying the specification charging the failure to report offense of which he was found guilty. The appellant argues that, while the members' finding of not guilty with respect to these conspiracy and distribution offenses demonstrates that they were not convinced that the appellant shared STANKE'S criminal design in the distribution to WHORL, any attempt on his part to report this distribution, which occurred in his presence, would have had incriminating potential with respect to the specifications alleging the conspiracy to distribute and the distribution to KATAFIAS of which he was found guilty and to which he had plead not guilty. The Government contends that the charging of the failure to report offense was appropriate for purposes of contingencies of proof and that the finding of guilty thereto raises no issue with respect to self-incrimination since, as the appellant was found not guilty of the underlying offense, he had no reason to believe that reporting it would have potential to incriminate him.

In *United States v. Heyward,* 22 M.J. 35, 37 (C.M.A.1986), the Court of Military Appeals observed that "[w]hen compelled disclosures have incriminating potential, the Government's need for the disclosure must be balanced against the individual's right against self-incrimination." In balancing these competing interests with respect to

the duty to report incidence of drug abuse, the Court held that "where, at the time the duty to report arises, the witness to drug abuse is already an accessory or principal to the illegal activity that he fails to report, the privilege against compelled self-incrimination may excuse his non-compliance." *Id.* The Court went on to observe that, for purposes of providing for contingencies of proof, it may be appropriate in some cases to charge an accused with both failure to report an offense and with the offense that he failed to report.

In applying the holding in *Heyward* to the instant case, we note that the distribution and conspiracy to distribute of which the appellant was found guilty occurred in the same time period and with the same co-conspirator as the incident which formed the basis for the conspiracy and distribution charges for which he was found not guilty and the failure to report an offense specification now in controversy. While the two sets of specifications related to two individual incidents, the only significant characteristic in which they differed was the party to whom the cocaine was distributed. Because they are so interrelated, how can it be said that the appellant would be able to make disclosures with respect to one incident without subjecting himself to at least the *potential* of incriminating himself with respect to the other incident? At the time the duty to report his observation of the distribution of cocaine from STANKE to WHORL arose, he was already involved as a co-conspirator of one of the criminal actors he was then observing, in a conspiracy the object of which was also a distribution of cocaine, the carrying out of which had occurred in close temporal proximity to the crime which he was observing. Thus, while the appellant may not have been guilty of either the distribution to WHORL or of conspiring with STANKE to make *that particular* distribution, for purposes of the exercise of his right to be free from compelled self-incrimination, we consider STANKE's distribution to WHORL to be a part of STANKE's and the appellant's general conspiratorial scheme to distribute cocaine to fellow members of

their command. Under the circumstances, we find that the right to be free from compelled self-incrimination excused his non-compliance with the regulation mandating disclosure of the observation of criminal activity. Accordingly, we set aside the findings of guilty to Charge II and the specification thereunder alleging a violation of a general regulation by failing to report an offense which came under his observation.

 Upon reassessment, we find no risk that the dismissed offense had significant impact on the adjudged sentence. We find that the sentence is appropriate for the findings of guilty to the distribution and conspiracy charges which remain. Accordingly, the findings, as modified above, and the sentence, as approved on review below are affirmed.