# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOPER, WILLIAMS, and SCHLACK
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant First Class VALENTINO G. VARLARO
United States Army, Appellant**

ARMY 20240319

Headquarters, U.S. Army Fires Center of Excellence and Fort Sill
Scott Z. Hughes, Military Judge (arraignment)
Frederic P. Gallun, Military Judge (motions & trial)
Colonel John M. McCabe, Staff Judge Advocate

For Appellant: Colonel Frank E. Kostik, Jr., JA; Lieutenant Colonel Kyle C. Sprague, JA; Major Peter M. Ellis, JA; Captain Andrew W. Moore, JA (on brief and reply brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Elizabeth G. Van Dyck, JA; Captain Melissa D. Zigrang, JA (on brief).

29 June 2026

------------------------------
OPINION OF THE COURT
------------------------------

WILLIAMS, Judge:

When an accused embarks upon an indiscriminate melee, he does not escape criminal liability because he did not inventory each item in the path of his destruction. Accordingly, we find appellant's conviction for wrongful damage of non-military property both legally and factually sufficient.

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of willfully disobeying a superior commissioned officer, one specification of damaging non-military property, two specifications of communicating a threat, one specification of wrongful appropriation, three specifications of domestic violence, one specification of burglary, and one specification of obstructing justice, in violation of Articles 90, 109, 115, 121, 128b, 129, and 131b, Uniform Code of Military Justice, 10 U.S.C. §§

890, 909, 915, 921, 928b, 929, and 931b [UCMJ]. The military judge found appellant not guilty of one specification of sexual assault and one specification of stalking, in violation of Articles 120 and 130, UCMJ.

Appellant assigned four errors to this court, one of which warrants discussion but no relief.[1] Appellant argues the evidence was legally insufficient to prove he had specific intent to damage his wife's laptop computer because the government did not prove he knew the laptop he damaged was in the backpack he threw. We disagree.

Separately, we note the military judge erroneously calculated the segmented sentence and provide relief in our decretal paragraph.

## BACKGROUND

Appellant argued with his wife in a car. As he became more aggressive, she dropped him off and left. Although she drove away, his wife eventually returned to pick up appellant.

Upon his wife's return, appellant began his destructive rampage. He ran to her car and began to beat its trunk. He opened the rear door of his wife's car and grabbed her suitcase. He tore her suitcase when he threw it onto the pavement. He also grabbed her backpack, which contained her laptop, and threw it hard into the parking lot. Appellant's wife stated he threw the bags "hard to make [her] go and look for [her] bags." Appellant also threw her car key and repeatedly slammed the car doors forcefully. His wife described him as acting in a "desperate" manner.

Following appellant's actions, appellant's wife discovered her laptop was damaged and no longer functioned. The government charged appellant with one specification of damaging non-military property for the laptop.

At trial, appellant's wife testified her laptop functioned before appellant hurled her backpack onto the ground. She further testified the laptop ceased to function after appellant's destructive act and explained the damage was so severe it could not be repaired.

---

[1] We have also given full and fair consideration to those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 481 (C.M.A. 1982), and determine they warrant neither discussion nor relief.

## LAW AND DISCUSSION

### A. Legal Sufficiency

We review issues of legal sufficiency de novo. *United States v. Harrington*, 83 M.J. 408, 414 (C.A.A.F. 2023) (citation omitted). In testing for legal sufficiency, we ask whether "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). This assessment "draw[s] every reasonable inference from the evidence of record in favor of the prosecution." *United States v. George*, 86 M.J. 38, 42 (C.A.A.F. 2025) (alteration in original) (quoting *Robinson*, 77 M.J. at 298). Legal sufficiency therefore "involves a very low threshold to sustain a conviction." *Id.* (quoting *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019)).

Article 109, UCMJ, criminalizes the destruction or damage of non-military property. In relevant part, the article specifies, "[a]ny person . . . who . . . willfully and wrongfully destroys or damages any property other than military property . . . shall be punished as a court-martial may direct." UCMJ art. 109. To prove an accused committed an Article 109 offense, the government must prove he had specific intent to damage or destroy property. *United States v. Bernacki*, 13 U.S.C.M.A. 641, 643–44, 33 C.M.R. 173, 175–76 (1963).

Intent "has traditionally been viewed as a bifurcated concept," which embraces "the specific requirement of purpose or the more general one of knowledge or awareness." *United States v. Johnson*, 24 M.J. 101, 105 (C.M.A. 1987) (quoting *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 445 (1978)). Accordingly, it is generally accepted a person intends the result of his action in two circumstances: "(1) when he consciously desires that result, whatever the likelihood of [it] happening from his conduct; and (2) when he knows that the result is practically certain to follow from his conduct, whatever his desire may be as to that result." *Id.* (quoting *U.S. Gypsum Co.*, 438 U.S. at 445).

The distinction between knowledge and purpose often has not been considered important. *U.S. Gypsum Co.*, 438 U.S. at 445 (quoting W. LaFave & A. Scott, Criminal Law 197 (1972)). This is because, regardless of the distinction, "there is good reason for imposing liability whether the [accused] desired or merely knew of the practical certainty of the results." *Id.* (quoting LaFave & Scott, *supra*, at 197). Consequently, irrespective of the distinction, when an accused consciously behaves in a prohibited manner, his conduct is justifiably the object of criminal punishment. *Id.* Thus, it is commonly held that a person intends the natural and probable consequences of his actions.

3

An intent to cause a certain result may be established by evidence that the result was the natural and probable result of the accused's action. *Johnson*, 24 M.J. at 105. Thus, the permissible inference that follows "is that the accused decided to act despite the likely consequences of doing so." *Id.* Importantly, only an inference is allowed, and the factfinder must determine whether the result was "highly foreseeable," and the accused knew the result was "almost certain and nonetheless went ahead." *Id.* at 106. If no such conclusion is reached, "the necessary intent is lacking." *Id.* at 105.

## B. United States v. Saul[2]

Appellant favorably cites the Court of Appeals for the Armed Forces' [CAAF] recent opinion in *Saul* for the premise that he cannot legally be found guilty because the government did not prove he intended to damage his wife's laptop. The appellant in *Saul* informed the military judge during his *Care*[3] inquiry that he did not intend to damage a car windshield when he "forcefully slammed his hand down" on it. 86 M.J. at 32. Nonetheless, the military judge accepted appellant's guilty plea to destroying the windshield after using a permissive inference to establish appellant's intent. *Id.* The CAAF ultimately found appellant's guilty plea improvident because appellant's statements that he did not intend to damage the windshield and was surprised it cracked substantially conflicted with a conclusion he intended to damage the windshield. *Id.* at 34.

Importantly, *Saul* involved a guilty plea, *id.* at 31, and a guilty plea is much different than a contested trial. In a guilty plea, the military judge must explain each element of the offense to which the accused pleaded guilty and must obtain sufficient responses from the accused to establish his acts or omissions satisfy those elements. *Care*, 18 U.S.C.M.A. at 541; *see also* Rule for Courts-Martial 910(e). Essentially, the military judge must examine the accused's plea to ensure the accused is convinced of his own guilt. *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996) (citing R.C.M. 910(e) discussion). Plainly stated, when an accused pleads guilty, "the issue must be analyzed in terms of providence of his plea, not sufficiency of the evidence." *Id.*

In analyzing appellant's case here, it is of no moment that CAAF concluded the appellant's guilty plea was improvident in *Saul*. The question in *Saul* was whether the appellant believed he was guilty; the question was *not* whether the government could prove his guilt beyond a reasonable doubt. 86 M.J. at 35 (observing at a subsequent trial a court-martial "might or might not [find] circumstantial evidence sufficient to prove beyond a reasonable doubt that

---

[2] 86 M.J. 30 (C.A.A.F. 2025).

[3] *See United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

[a]ppellant acted willfully and wrongfully even if [he] were to testify that he did not intend to destroy the windshield."); *see also Faircloth*, 45 M.J. at 174. The military judge did not resolve the inconsistency between appellant's statement that he did not intend to destroy the windshield and the requirement that his destruction of the property be willful. *Saul*, 86 M.J. at 35. Consequently, CAAF merely concluded his plea was improvident. *Id.*

Here, appellant did not plead guilty. Accordingly, the trier of fact was free to consider both the evidence and permissible inferences derived therefrom in determining appellant's guilt. Because these principles were not available to the military judge in *Saul*, the result in that case is not dispositive to our analysis. We now turn to discuss whether the evidence in appellant's case was legally sufficient.

### C. Appellant Willfully Damaged his Wife's Laptop

Appellant, in a fit of rage, seemingly sought to damage anything he could touch. He acted out, beat his wife's car trunk and slammed the car doors. He ripped his wife's suitcase and threw her backpack "hard" into the parking lot. Within her backpack was her laptop, which was irreparable after it was hurled onto the pavement.

Appellant argues the evidence was legally insufficient to prove he had specific intent to damage a laptop because there was no evidence he *knew* the backpack contained a laptop. His assertion is unavailing. As an initial matter, the factfinder was free to conclude appellant intended the probable and foreseeable consequence that items in the backpack would be damaged if thrown onto the ground. *Johnson*, 24 M.J. at 105. Moreover, the factfinder could use his common sense to conclude appellant would have known his wife's backpack was not empty based on its heft when he picked it up. And, finally, the factfinder could use "circumstantial evidence, such as the manner in which the acts were done," to ascertain willfulness. *Manual for Courts-Martial, United States* (2019 ed.) [*MCM*], pt. IV, ¶ 45.c.(2).

The evidence at trial proved appellant wanted to damage his wife's property. Trial testimony placed her laptop in her backpack, an altogether unsurprising happenstance. Viewing the evidence in the light most favorable to the prosecution, *Robinson*, 77 M.J. at 297–98, the factfinder was free to conclude appellant willfully damaged his wife's laptop. The circumstances surrounding his actions, the manner of his actions, and the reasonable likelihood that damage would be caused when he forcefully threw the backpack onto a hard surface, were sufficient for a rational factfinder to determine appellant intended to damage his wife's property as charged.

Alternatively, whether through transferred or concurrent intent, the factfinder reasonably could conclude appellant intended to damage the laptop. Judicial

application of either doctrine to Article 109, UCMJ, is lacking. Thus, we explore their potential when analyzing the willfulness of an accused's actions.

### D. Transferred and Concurrent Intent

Transferred and concurrent intent have been used to find criminal liability when an accused's *actus reus* resulted in an unintended victim, albeit typically in allegations of murder. Stated simply, courts have concluded when an accused has "an intent to kill and an act designed to bring about the desired killing, [he] is responsible for all natural and probable consequences of the act, regardless of the intended victim." *United States v. Willis*, 46 M.J. 258, 261 (C.A.A.F. 1997). Although the application of transferred and concurrent intent doctrines to wrongful damage or destruction of property is absent in precedent,[4] we see no reason why either should not apply equally to the specific intent requirement of Article 109.[5,6]

---

[4] We acknowledge CAAF in *Saul*, noted "[t]ransferred and concurrent intent do not apply *here* and therefore cannot reconcile [a]ppellant's express statements that he did not intend to damage the windshield . . . ." 86 M.J. at 35 (emphasis added). *Saul* involved only one item of property and one act—hitting a windshield. Accordingly, other intentional acts were not available from which intent could be transferred to or held concurrent with the windshield. Tellingly, CAAF did not say transferred or concurrent intent could not apply to Article 109, UCMJ, offenses and it certainly could have. The use of the word "here," rather than specifying that concurrent and transferred intent are inapplicable to property crimes, suggests the facts of *Saul* simply did not give rise to either doctrine.

[5] Certainly, murder, or an attempt thereof is a crime against a person and is a more serious offense than destruction of non-military property. However, regardless of the difference in severity, each requires the government to prove the same *mens rea*, namely intent to bring about a specific result. Consequently, consideration of how the government may establish and prove an accused's *mens rea* should be treated similarly. While the *MCM* does not explicitly provide that intent to damage property may be transferred, this omission is not dispositive because the *MCM* also does not discuss transferred intent for intentional murders charged under Article 118(2), UCMJ. Regardless of that omission, transferred intent may be used to find specific intent for intentional murders. Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 3A-56-2, Note 5 (29 Jul. 2025) [Benchbook].

[6] Additionally, prominent political theorists have posed the protection of property is as important as the protection of life and liberty when establishing a civil society. *See* John Locke, *Two Treatises of Government* 323–24; 329 (Peter Laslett ed., Cambridge Univ. Press 1988) (1690) (stating, "Man being born . . .with a Title to

(continued . . . )

Concurrent intent is found "when the nature and scope of the attack, while directed at a primary victim, are such that we can conclude the perpetrator intended to ensure harm to the primary victim by harming everyone in that victim's vicinity." *Willis*, 46 M.J. at 261 (quoting *Ford v. State*, 330 Md. 682, 716 (Md. 1993)). Under a concurrent intent framework, an accused who, when targeting a specific individual, creates a danger zone, is liable for both his intended target and everyone at risk of his action within the zone of danger. *Id.* at 261–62 (explaining appellant set up a "killing zone"); *Ford*, 330 Md. at 717 (observing the defendant intended to create a "kill zone"); *Ruffin v. United States*, 642 A.2d 1288, 1298 (D.C. 1994) (finding concurrent intent to kill "everyone in the path of the bullets" fired at the intended target).

Extension of the doctrine to wrongful damage or destruction of property is natural. Take for instance *Willis*, 46 M.J. 258. There, CAAF observed, "where there is . . . an intent to *kill* and an act designed to bring about the desired *killing*, the [accused] is responsible for all natural and probable consequences of the act, regardless of the intended *victim*." *Id.* at 261 (emphasis added). Merely replacing three words with terms from Article 109, UCMJ, layers this understanding of specific intent to a crime against property:

> Where there is an intent to *damage or destroy* and an act designed to bring about the desired *damage or destruction,* the accused is responsible for all natural and probable consequences of the act, regardless of the intended *object.*

Further, an action taken with intent to damage or destroy a certain piece of property, within a created zone of danger, that results in the destruction of many more items, reasonably should be criminalized for each item of property damaged or destroyed.

When appellant flung his wife's backpack, hard, onto pavement, the factfinder was free to infer and conclude, beyond a reasonable doubt, the appellant intended to

---

(. . . continued)
perfect Freedom, and an uncontrolled enjoyment of all the Rights and Priviledges of the Law of Nature, equally with any other Man . . . hath by Nature a Power not only to preserve his Property, that is, his Life, Liberty and Estate . . . but to judge of, and punish the breaches of that Law in others . . . ." And further observing, "Government has no other end but the preservation of Property . . . .") (capitalization and spelling in original); *see also* David Hume, *A Treatise of Human Nature* 526 (L. A. Selby-Bigge ed., Oxford: Clarendon Press 1896) (1739) (discussing "three fundamental laws of nature, that of the stability of possession, of its transference by consent, and of the performances of promises," and observing, "'Tis on the strict observance of [these] three laws, that the peace and security of human society entirely depend . . . .").

damage the backpack. Whether appellant's tirade created an expansive zone of danger, which encompassed all property within his reach, or a more limited danger zone of appellant's wife's backpack and the items contained therein, his action of intentionally flinging the backpack containing his wife's laptop into the parking lot naturally and foreseeably resulted in damage to the laptop. The backpack foreseeably contained items that could break if thrown. Consequently, his specific intent to damage the backpack extended to all items within the backpack, including his wife's laptop.

Lastly, the facts and circumstances of appellant's actions proved, at a minimum, he intended to damage his wife's backpack when he hurled it onto the pavement. Accordingly, the principle of transferred intent would extend to items contained within the backpack.

Similar to concurrent intent, transferred intent historically has been applied when an accused kills or inflicts great bodily harm on an unintended victim. Through this doctrine, an accused who kills or inflicts great bodily harm on an unintended victim is criminally responsible because his intent to kill or inflict great bodily harm on the intended target transfers to the actual victim. *See* Benchbook, para. 3A-56-2, Note 5.

As with concurrent intent, it would be reasonable to apply the doctrine of transferred intent to crimes against property. When appellant sought to damage his wife's backpack by throwing it onto the pavement, one could conclude that intent to damage the backpack transferred to any items inside. Further, a reasonable factfinder could conclude a backpack with a laptop inside would have a certain heft to it—which appellant would have been aware of when he indiscriminately threw it into the parking lot during his fit of rage. Accordingly, via a transferred intent theory, he could be found guilty of willful damage to the laptop.

### E. Concurrent and Consecutive Sentences Create Confusion

Although not raised by either party, we find the military judge miscalculated the duration of appellant's confinement. The military judge announced a series of consecutive and concurrent sentences for each specification appellant was convicted of, and, separately, he announced a total confinement period of 374 days. Shortly after adjournment, the military judge called the court-martial back to address a perceived miscalculation in his announced sentence. During this brief Article 39(a) session, he mistakenly stated the sentence, as originally announced, would result in a total confinement period of 404 days—30 days more than he intended.

The military judge sought to correct the perceived error to ensure appellant served only 374 days' confinement. He stated, "[t]hat is my mistake. [Appellant] will not experience detriment because of my error." Consequently, the military

judge directed the 30-day sentence for the Specification of Charge IX to run concurrent to all other terms of confinement. He memorialized the change on the Statement of Trial Results.

By this court's calculation, the effect of running Charge IX concurrent to all other terms of confinement modified the total confinement period from 374 days to 344 days. Because the military judge's initial announcement did amount to 374 days of confinement, his subsequent action to have the 30-day period of confinement for the Specification of Charge IX run concurrent with all other terms of confinement resulted in a total duration of confinement of 344 days.

The military judge was correct that appellant should not be harmed by computational errors. Here, a computational error inures to the benefit of appellant, and we grant appropriate relief in our decretal paragraph.

## CONCLUSION

The findings of guilty are AFFIRMED. Only so much of the sentence as provides for a bad-conduct discharge, confinement for 344 days, total forfeitures, and reduction to the grade of E-1, is AFFIRMED.[7]

Senior Judge COOPER and Judge SCHLACK concur.

FOR THE COURT:

//JAMES W. HERRING, JR.
Clerk of Court

---

[7] We note two errors to the Statement of Trial Results, incorporated into the Judgment of the Court, regarding these specifications which warrant correction. The "Finding/Disposition" block of Specification 1 of Charge V is corrected to note appellant "struck [his wife's] face with [appellant's] *hands*." The same block pertaining to the Specification of Charge IX is corrected by removing the superfluous words "by damage".